RICHTER *v.* BACON, commissioner, *et al.*

1. A local school system for the maintenance and support of which there existed no express power to levy a tax at the time of the adoption of the constitution of 1877 does not thereafter authorize the levy of a tax by the county authorities to support the same, without compliance with the provisions of art. 8, sec. 4, par. 1, of that constitution (Civil Code of 1910, § 6579), inhibiting the levy of tax by counties, unless the law authorizing the levy has been approved by two thirds of the popular vote.

(*a*) The local school system of Chatham county did not provide, by the various local acts establishing it, that the same should be supported by county taxation; nor did such local acts, separately or in conjunction with the act establishing a board of county commissioners of Chatham county, have the effect of empowering the county authorities, at the time the constitution of 1877 was adopted, to levy a tax to support the schools of Chatham county.

(*b*) So much of the act of 1883 (Acts 1882-3, p. 522) as empowers the commissioners of Chatham county to levy and collect a tax to maintain the public schools of the City of Savannah and the County of Chatham, contravenes article 8, section 4, paragraph 1, of the constitution (Civil Code of 1910, § 6579), because no provision is made for the approval of the authority to tax by a popular vote.

2. An assessment by county commissioners levying a tax of a certain amount upon each thousand dollars of the taxable property in the county, for the purposes specifically enumerated in the language of the constitution, stating the per centum of the general State tax for each of the purposes, and the amount yielded under each item, as calculated upon the general tax return, is in compliance with the statute with regard to the assessment and levy of taxes.

                    JUNE 26, 1916.

Petition for injunction. Before Judge Charlton. Chatham superior court. October 26, 1915.

*George H. Richter* and *W. B. Stubbs,* for plaintiff.

*George T. Cann* and *Samuel B. Adams,* for defendants.

EVANS, P. J. A taxpayer sought to enjoin the collection of the taxes levied by the commissioners of Chatham county, on the ground that there was no authority of law for the collection of the item of the tax levy to raise money for educational purposes, and on the further ground that the whole levy and assessment were not made in compliance with law. The court refused the injunction.

1. The subjects of taxation and education are separately treated in different general divisions, called articles, of the constitution of 1877. The provisions relating to taxation are comprehended in

the seventh article. The first section of that article (Civil Code, § 6551) enumerates the purposes for which a general State tax may be levied, which includes a tax for education. By authority of this provision the General Assembly annually appropriates a large sum of money for the support of the public schools in the State. In the 6th section of this article (Civil Code, § 6562) it is declared that the General Assembly shall not have power to delegate to any county the right to levy a tax except for certain specified purposes, among which is a tax for educational purposes. Article 8 deals comprehensively with the subject of education. It declares that there shall be a thorough system of common schools for the education of children, and a school fund is provided. Civil Code, §§ 6576, 6578. In section 4 (Civil Code, § 6579) it is provided that authority may be granted to counties, municipal corporations, and other named political subdivisions "to establish and maintain public schools in their respective limits by local taxation; but no such laws shall take effect until the same shall have been submitted to a vote of the qualified voters in each county," municipal corporation, or other named political subdivision, "and approved by two-thirds majority of persons voting at such election." It is apparent that the power of the General Assembly to grant authority to a county to levy a tax for educational purposes, mentioned in art. 7, sec. 6, par. 2 (Civil Code, § 6562), is dependent upon the approval of the grant of such power by two thirds of the voters of the county voting at an election held for that purpose, as provided in art. 8, sec. 4, par. 1 (Civil Code, § 6579). In other words, no legislation for the levy of a county tax for educational purposes in a particular county is valid unless the act has been submitted to the voters of the county, and approved by a two-thirds majority voting at an election held for the purpose of ascertaining popular approval of the act. It is further provided in article 8, section 5, paragraph 1 (Civil Code, § 6580) that "Existing local school systems shall not be affected by this constitution." The controlling question in the instant case turns upon the effect to be given to the words "existing local school systems," as applied to the power of a county to support by taxation a local school system, where the statute establishing the local system does not provide for the support of the schools in the system by taxation. The defendants in error broadly contend that a local school system in-

augurated and maintained by a board of education by virtue of an act of the General Assembly passed anterior to the constitution of 1877 may be supported by a local school tax, notwithstanding the local act may not in terms provide for the support of the local system by taxation. On the other hand, the plaintiff takes the position that this clause of the constitution did not contemplate that existing local school systems, which were not expressly authorized to be supported in whole or in part by the levy of a local tax, should be exempt from the operation of the constitution. We think the latter view is a more reasonable reflection of the meaning of the framers of the constitution, and more in harmony with the general purpose of that instrument respecting taxation. No feature of the constitution of 1877 is more prominent than the limitations on the taxing power. It sets definite barriers to the future levy of taxes. This is especially true with respect to the support by counties and certain subordinate political divisions of local school systems. It declares that henceforth the power to establish and maintain the same by taxation depends both upon legislative sanction and the approval of such law by two thirds of the voters. Keeping in mind this pronounced purpose, it would seem clear that existing local school systems exempted from the constitution, so far as their support by taxation is concerned, were those systems in the administration of which power had been conferred upon the boards or other county authority to raise money by a local tax for their support. While the point was not raised in the case of *Smith* v. *Bohler,* 72 *Ga.* 546, the Chief Justice took pains to state that the local system for public instruction in the county of Richmond contained a provision empowering the board of education of that county to levy such a tax as they may deem necessary for public-school purposes. The argument is advanced that there existed authority, when the constitution of 1877 was adopted, for the commissioners of Chatham county to levy a local educational tax. The history of the local legislation put forward to substantiate this claim is as follows: In 1851 (Acts 1851-2, p. 331) the justices of the inferior court of Chatham county were authorized to set apart from the funds of the county the sum of $10,000, which, "together with such other sums as may from time to time be added thereto," was to be invested and the income applied to the support of the common or free schools of the county.

This fund was declared to be a fund independent of any other fund for the purpose of education in Chatham county, and the act declared that nothing therein contained should affect the right of the justices of the inferior court to levy an extra tax for educational purposes. In 1866 (Acts 1865-66, p. 78) the General Assembly passed an act to establish a permanent board of education for the City of Savannah, with power to establish a system of education for white children in the city. The board was given power to receive from the proper official authorized to distribute the educational fund for the county so much of the fund as should be in proportion to the number of white children of the county residing in the city, and also to demand and expend such funds as might be appropriated by the City of Savannah. In the same year that act was so amended as to change the name and extend the authority and powers of the board over the County of Chatham. The amending act declares that the board shall be authorized to distribute the State and county educational funds, "the whole proportion of the said funds to which the said County of Chatham may be entitled," provided that all moneys appropriated by the city shall be exclusively appropriated to the education of white children residing in the city. Acts 1866, p. 175. In 1873 (Acts of 1873, p. 235) an act was passed to create and organize commissioners of Chatham county. They were given the same jurisdiction which was exercisable by the ordinary when sitting for county purposes. It is said that these acts established for Chatham county a local school system with power to support it by local taxation, which was unaffected by the provisions of the constitution respecting the requirement of a vote of the people as a condition precedent to the levy of a local tax for educational purposes. It is contended that under section 548 of the Code of 1868 it is provided that county taxes shall be assessed for specific purposes, including that "to pay charges for educational purposes, to be levied only in strict compliance with law," and under section 1281 of the same Code it is declared that justices of the inferior court shall have authority, upon the recommendation of the grand jury, to levy a tax upon the State tax for educational purposes, of such per cent. as the grand jury may recommend. The argument is that these code sections and the local act of 1873 should be construed together as being in pari materia.

Further, that, as the ordinary had the powers of the justices of the inferior court sitting for county purposes, the act of 1873 should be construed as conferring upon the commissioners of Chatham county the power to levy a tax for educational purposes, which was to be .expended by the board of education created under the acts of 1886; and that these statutes construed together established a local educational system supported by taxation. We can not agree with this process of reasoning. The acts of 1866 did not contemplate the support of the school system therein authorized, except .from Chatham county's share of the general State educational fund, private donations, and appropriations from the City of Savannah. There is not the remotest reference to county taxation as a means of support of a local school system. This lack of taxing power was not supplied by the act of 1873, establishing the board of county commissioners. Section 548 of the Code of 1868 deals with the assessing of county taxes, and the provision for the assessment of taxes to pay for charges for educational purposes is confined to the levy of such tax "only in strict compliance with law;" manifestly referring to statutes which authorize a levy, and dependent on such for the power to levy. This same provision is found in the Code of 1910, § 513, and one would hardly contend that the ordinary now has power, without compliance with the constitution, to levy a local educational tax. The other section (1281) empowered justices of the inferior court, on recommendation of the grand jury, to levy a tax upon the State tax for educational purposes. It is to be doubted that this power of the justices of the inferior court to tax for educational purposes was transferred to the ordinary by the constitution of 1868, inasmuch as that instrument declared that "The General Assembly, at its first session after the adoption of this constitution, shall provide a thorough system of general education to be forever free to all children of the State, the expense of which shall be provided for by taxation, or otherwise." The acts of 1870 and 1872, passed in pursuance thereof, provided for a school system, and the provisions of section 1281 do not appear in the Code of 1873. The compilers of· that code treated the section as repealed either by the constitution or by the statutes. If this be so, when · the act of 1873, appointing commissioners for Chatham county, was passed, the ordinary did not have the power on recommendation of the

grand jury to levy a local school tax. Even if the ordinary did possess the power to levy a local school tax in 1873, certainly that power was taken from him by the constitution of 1877. We do not think it was the purpose of the legislature by the act of 1873 to give to the commissioners of Chatham county a power to tax for education different from that exercisable in other counties, but in that respect the powers exercised by the ordinary generally in other counties would be exercised in Chatham county by the commissioners of that county; and when the ordinary was shorn of that power by the constitution, automatically the commissioners of Chatham county could no longer exercise it. We have examined the various local statutes and general statutes relied on by defendants in error, and we have reached the conclusion that the commissioners of Chatham county had no authority, on the adoption of the constitution of 1877, to levy a local tax for education, nor did such power exist by virtue of the act of 1866, establishing the board of education of Chatham county. The clause of the constitution that existing local school systems shall not be affected by the constitution did not have the effect to confer the power of taxation where it was non-existent; it simply preserved local systems from the operation of the constitution.

Later on, in 1883 (Acts of 1882-3, p. 522), the legislature undertook expressly to give the commissioners of Chatham county the power "to levy and collect annually a tax upon the taxable property in said county of Chatham, sufficient to raise the revenue required to support and maintain the public schools in the City of Savannah and the County of Chatham." This provision of the act is assailed as contravening the constitutional prohibition that no such law shall be valid until approved by two thirds of a popular vote at an election whereat the law is to be submitted for approval. This attack must prevail. It follows that the commissioners of Chatham county have no legal power to levy and collect a local tax for education in that county.

2. Article 7, section 6, paragraph 2, of the constitution (Civil Code, § 6562) denies the General Assembly power to delegate to any county the right to levy a tax for any purpose except the specific purposes expressly named in that paragraph of the constitution, to wit: "for educational purposes; to build and repair the public buildings and bridges; to maintain and support prisoners;

to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing, to pay the county police, and to provide for necessary sanitation." Section 513 of the Civil Code, which declares that county taxes shall be assessed for the following purposes (which are thereafter enumerated) is intended to cover the same purposes expressed in the constitution, although the language is not the same as that employed in the constitution. The tax levy must specify the per cent. levied for each specific purpose. The assessment applies to every species of values or specifics which are taxed by the State. Civil Code, § 514. An assessment by county commissioners levying a tax of a certain amount upon each thousand dollars of the taxable property in the county, for the purposes specifically enumerated in the language of the constitution, stating the per centum of the general State tax for each of the purposes, and the amount yielded under each item, as calculated upon the general tax return, is a compliance with the statute with regard to the assessment and levy of taxes. See *Gaines* v. *Dyer,* 128 *Ga.* 585, 595 (58 S. E. 175).

<div align="right">

*Judgment reversed.* *All the Justices concur.*