28224, 28248. BOARD OF PUBLIC EDUCATION &
ORPHANAGE FOR BIBB COUNTY v. ZIMMERMAN et al.;
and vice versa.

INGRAM, Justice. The main appeal and cross appeal in this case

arise out of issues relating to the levy and collection of taxes for the Bibb County public school system.

The Board of Education brought an action for a writ of mandamus, and for a declaratory judgment, against the Bibb County Board of Commissioners (and others as nominal parties) to compel the commissioners to approve the tax assessment (school budget) submitted to it by the Board of Education by levying and collecting the necessary taxes therefor. The Board of Education determined that the sum of $11,093,777 was necessary to operate the Bibb County schools for 1973-74, and called on the county to levy taxes to provide these funds. The county commissioners declined to approve the entire sum and, instead, approved "the amount of $9,492,543 and no more." Translated into tax language, this means the Board of Education determined it needed a levy of 25.43 mills for the operation of the school system that year whereas the county approved a levy of only 21.72 mills.

The Board of Education initiated the present litigation to resolve these conflicting positions and determine whether the board has the power to decide the necessary tax levy or whether it is subject to the approval of the county commission.

The lawsuit consists of four counts, based upon different theories of recovery, and the parties entered into a stipulation in the trial court. It was agreed that only issues of law were presented for decision and after a hearing the trial court denied all relief sought by the Board of Education. This ruling brought the main appeal while the cross appeal complains the trial court erred in striking the eighth defense filed by the commissioners to the board's action.

## I.
## Cross Appeal.

The cross appeal, dealing with the county's eighth defense stricken by the trial court, will be considered first in this opinion because if this appeal has merit it will dispose of the issues presented on the main appeal. This defense, urged unsuccesfully by the county in the trial court, asserts that it would be unlawful for the county commissioners to fix a millage rate for school taxes in excess of the 20 mill limit imposed by Art. VIII, § XII, Par. I of the Georgia Constitution of 1945 (Code Ann. § 2-7501). This constitutional provision is, in part, as follows: "The fiscal authority of each county shall annually levy a school tax for the support and maintenance of education, not greater than 20 mills per dollar as certified to it by the county board of education, upon the

assessed value of all taxable property within the county located outside any independent school system or area school district therein."

The Board of Education contends the Bibb school system is an "independent school system" to which the above quoted section of the Constitution does not apply whereas the county argues that the Bibb school system is not an independent system but is a "county-wide system" to which this provision of the Constitution is applicable.

The Bibb County school system has a venerable record of public service, reaching back to the creation of the Board of Education in 1872 by a special Act of the General Assembly of Georgia. As amended in 1876, the Act provides in pertinent parts as follows: ". . . and said board (the Board of Education) shall further have the power to assess such tax upon the taxable property of said County of Bibb as they may think necessary to support the system of schools . . . which they may establish, which tax, *when approved by the Board of County Commissioners of Bibb County,* shall be levied by the Board of County Commissioners of Bibb County and collected like other taxes of said county, and the *said board (the Board of county Commissioners) is hereby required to approve or disapprove of said tax before the first Monday in June of each year."* (Emphasis supplied.)

At that time, Georgia's basic legal charter was the Constitution of 1868. It contained no millage limitation such as the present provision of the 1945 Constitution and none of the Acts creating or amending the structure of the Bibb County school system imposed any millage limitation for school taxes. In 1877, Georgia came under a new Constitution. In Art. VIII of this document, provision was made for a uniform system of common schools. Authority was granted, under Sec. IV, Par. I, to establish and maintain public schools by local taxation. Under this common school system plan, the county authorities with power to levy and collect the taxes were required to levy the taxes determined by the Board of Education to be needed for school purposes. A State Board of Education was created by the 1877 Constitution and provision was made for a statewide fund, to be appropriated by the General Assembly for the support of local school systems. Existing school systems established prior to adoption of the 1877 Constitution were referred to as independent school systems. These systems were expressly excluded from the common school system under Secs. IV and V, Art. VIII, of the 1877 Constitution:

"Existing local school systems shall not be affected by this Constitution." Consequently, the Bibb County school system was left exactly as it was prior to adoption of the 1877 Constitution. As this court said in 1904, some seventy years ago, "The Constitution preserved the local systems as they existed in 1877." *Barber v. Alexander,* 120 Ga. 30, 32 (47 SE 580). See, also, *Board of Public Ed. v. State Bd. of Ed.,* 190 Ga. 581 (10 SE2d 365).

This brings us to the Constitution of Georgia, adopted in 1945, where we find in Art. VIII, Sec. X, Par. I the following: "Public school systems established prior to the adoption of the Constitution of 1877 shall not be affected by this Constitution." In *Commrs. of Chatham County v. Savannah Electric &c. Co.,* 215 Ga. 636, 638 (112 SE2d 655), this court noted: "When the Constitutional Commission had under consideration the proposal of a new Constitution in 1945, paragraph 1 of section 4 of article 8 of the then existing Constitution of 1877 as amended (Code § 2-6901) granted to the counties authority, on recommendation of the local boards of education, to assess and collect taxes, for the support of public schools under their control, of not less than one nor more than five mills on the dollar of all taxable property of the counties outside of independent local systems. *This paragraph expressly provided, however, that it did not apply to counties having a local school system of taxation adopted prior to the Constitution of 1877."* (Emphasis supplied.)

We conclude, therefore, that neither the 1877 nor the 1945 Constitution of Georgia had any effect upon the school tax provisions of the Acts providing for the Bibb County school system. In *Richter v. Bacon,* 145 Ga. 408 (89 SE 367), this court indicated that the General Assembly or the citizens of Georgia, through adoption of constitutional authority, could provide any manner of taxation for existing local or independent school systems established prior to 1877. Subsequently, this court had occasion to pass on whether this had been accomplished in the Chatham County and Savannah school system which was also a pre-1877 local system. In the *Commrs. of Chatham County* case, supra, the *Richter* decision was noted and the court determined that the 20 mill limit for school tax purposes imposed by the 1945 Constitution was applicable to that school system because of specific constitutional language making it applicable. See, also, *State Bd. of Ed. v. County Bd. of Ed.* 190 Ga. 588 (10 SE2d 369), where the Bibb school system was referred to by this court as an "independent system." We hold that nothing in the 1945

Constitution changed it from the independent status it occupied prior thereto.

Determinative of the cross appeal, then, are our conclusions that the Bibb County school system is an independent school system validly created by an 1872 special Act of the General Assembly, as amended; that it was not affected by the 1877 or 1945 Constitutions; but, that it is subject to constitutional change and to general laws adopted by the General Assembly of Georgia.

The trial court, having correctly determined that the eighth defense of the county officers did not present a valid legal defense to the relief sought by the complainants, it was not error to strike such defense and this judgment is affirmed on the cross appeal.

II.

Main Appeal.

We move next to consideration of the errors enumerated on the main appeal. As noted earlier the trial court denied all of the relief sought by the Board of Education and the correctness of this ruling must be decided on this appeal.

In Count 1 of the complaint, appellants contend that the Minimum Foundation Program of Education Act (Ga. L. 1964, p. 3 et seq; Code Ann. 32-6) repealed by implication § 3 of the 1872 Act, as amended (the Bibb County school system Act) wherein provision is made for approval by the county commissioners of the tax assessment (school budget). The Board of Education argues that the procedures for participation in the Minimum Foundation Program are inconsistent with the county commissioners' power to approve or disapprove the school tax under § 3 of the 1872 Act, as amended. Section 32-642 of the Annotated Code, in the Minimum Foundation Program chapter, provides that the local school board "shall . . . adopt a final school budget for the next fiscal school year and determine the local tax levy to be made in the local unit of administration in support of said budget." The Board questions how it can adopt a "final" school budget if the county commission retains power (under the 1872 Act) to approve or disapprove it. Quaere: Are these provisions of the two Acts in question repugnant or inconsistent to the extent they cannot stand together? This basically is the test to be employed in determining whether there has been a repeal by implication.

"Repeals by implication are not favored, and result only where the later of two acts is clearly repugnant to the former and so inconsistent with it that the two cannot stand together, or where it is manifestly intended to cover the same subject-matter of the

former and operate as a substitute for it, that such a repeal will be held to result." *State Bd. of Ed. v. County Bd. of Ed.*, 190 Ga. 588, 592, supra.

When these two Acts (the Minimum Foundation Program Act and the 1872 Act, as amended) are laid side by side, we see no conflict between them. The school board must necessarily adopt a final budget before it can calculate a tax that can be considered by the county commission for approval or disapproval. The provision, in the Minimum Foundation Program Act, that the local school budget must also be approved by the State Board of Education does not suggest a different result. This requirement was designed merely for the State Board to ascertain that the "required local effort" for the Minimum Foundation Program has been made. There is no issue in this case that the local school budget, as approved in part by the county commission, does not satisfy the minimum requirements for State funding of the Bibb County school system. We do not read the Minimum Foundation Program Act as being in conflict with the 1872 special Act, as amended, which created and sustains the Bibb County school system. To the contrary, Code Ann. § 32-606, indicates that the intent of the framers of the Minimum Foundation Program Act was to recognize the existing statutory powers and duties of local school system boards of education rather than to repeal these laws. This section of the Minimum Foundation Program Act provides that: "The qualifications, manner and time of selection, election or appointment, tenure, state compensation if provided for, *and powers and duties of superintendents and members of boards of education of the several local units of administration shall be as prescribed by law.*" (Emphasis supplied.) This section left intact and viable the provisions of the 1872 Act, as amended, dealing with the power and duties of the Bibb County Board of Education including those which provide for submission of the school tax (final school budget) to the Bibb County Commission for its approval or disapproval.

The complaint of the Board of Education in Count 2 seeks relief upon the basis that a 1968 statute (Ga. L. 1968, pp. 2835, 2838) also had the effect of repealing by implication § 3 of the 1872 Act. The 1968 statute added a new section to the 1872 Act, designated as Section 3A. It authorizes and directs the Board of Education to submit to the county commission a copy of its final budget prepared pursuant to the Minimum Foundation Program Act. There is no indication in the 1968 Act that § 3A was intended

to replace or change in any way the existing provisions of § 3 of the original Act requiring county approval of local school tax assessed by the board. We believe this 1968 amendment can and should be construed in harmony with the existing statute. See *Botts v. Southeastern Pipeline Company,* 190 Ga. 689, 700 (10 SE2d 375).

Count 3 of the complaint is bottomed on the theory that still another amending Act caused an implied repeal of the authority of the county commission to approve or disapprove the school tax. The 1971 statute, amending the 1872 Act, as amended, changed the means of selecting the membership of the board in order for the board to become an elective body, with its members elected from specific election districts in the county. We find neither intent nor language in the 1971 Act which would authorize us to conclude that approval of the local school tax by the county commission has been changed by this statute.

In the final count of the complaint, the theory upon which relief is sought is that if the 1872 Act as amended still authorizes the county commission to approve or disapprove the school tax, it must do so only by approving or disapproving the entire tax and this must be done prior to the first Monday in June each year. Under the pleadings and stipulation in this case, we find the county commission approved the school tax assessment of the board in part on May 30, 1973. The board argues this action of the commission was not an approval or disapproval within the meaning of the 1872 Act as amended. The board contends that since the county failed to approve or disapprove the school tax in toto prior to the first Monday in June, this worked an approval by operation of law. We do not agree this is correct. The power to approve the whole includes the power to approve any part thereof less than the whole. See *Carroll v. Ragsdale,* 192 Ga. 118 (15 SE2d 210); and, see also *Watkins v. Jackson,* 227 Ga. 213 (179 SE2d 747), the ratio decidendi of which militates against the conclusion that failure of the county commission to act on the school tax assessment by the first day of June would imply approval.

### III.
### Conclusion.

This is a "taxing" case, but it has been capably treated by both the appellants and appellees in their thorough and well-prepared briefs to this court. Our study and consideration of the important

issues in this case compel us to believe that the trial judge who heard and decided the case in the superior court correctly decided these issues and the judgments rendered in Bibb Superior Court on the main appeal and cross appeal are affirmed.

*Judgments affirmed on the main and cross appeals. All the Justices concur. Jordan, J., concurs specially.*

ARGUED SEPTEMBER 11, 1973 — DECIDED JANUARY 8, 1974.

*Jones, Cork, Miller & Benton, Frank C. Jones, W. Warren Plowden, Jr., Hubert C. Lovin, Jr.,* for appellant.

*Sell, Comer & Popper, Ed Sell, Jr., Joseph W. Popper, Jr., Richard L. Chambers, Assistant Attorney General, Claude W. Hicks, Jr., William M. Flatau,* for appellees.

JORDAN, Justice, concurring specially. This case highlights the conflicts which have resulted from the special treatment accorded so-called "independent" school systems by their exclusion from certain provisions of the 1877 and 1945 Constitutions. The primary purpose of the Constitution and the statutes, including the Minimum Foundation Program, has been to provide for a uniform system of common schools throughout the state. Excluding the independent system from these general provisions defeats this purpose and countenances discrimination between systems by allowing a higher rate of taxation in the independent systems. This hinders achievement of the goal of offering the same quality educational opportunity to all the children in the state. This discriminatory feature of the 1945 Constitution should be eliminated.