### 18916. PATTERSON *et al. v.* BOYD *et al.*

CANDLER, Justice. On September 2, 1954, J. G. Patterson and several others brought an action for equitable relief against H. L. Boyd, T. D. Lancaster, D. R. Wilcox, Sr., J. T. Vaughn and W. Z. Wooten in their respective official capacities as members of the Telfair County Board of Education. Briefly and in substance, the petition as amended alleges: Four of the plaintiffs (Patterson, Giddens, McVey and Jones) are trustees of Workmore school, and all of the plaintiffs are citizens, taxpayers and voters of Telfair County and of the Workmore school community. During 1954, the defendants, as members of the county board of education, decided (1) to build a new high school in the Workmore community to be known as the Telfair County High School for the high school pupils of the Workmore, Ocmulgee and Milan schools; (2) to improve, maintain and operate a high school at McRae-Helena; and (3) to improve, maintain and operate a high school at Lumber City. The defendants submitted this program, together with plans and specifications for necessary buildings, to the State Board of Education, and the latter board upon administrative review of the program adopted it and certified its action to the State School Building Authority. The defendants' application for funds to finance this program was approved by the State Board of Education, the State Department of Education School Building Service and the State School Building Authority and the latter is in process of issuing revenue certificates for the purpose

of financing the three projects. On August 31, 1954, the defendants, for political reason, repudiated their former action and they now propose and have voted (1) to establish and operate a high school at McRae for all of the high school pupils of the Workmore, Jacksonville and Ocmulgee communities and school areas; (2) to maintain a high school at Milan; and (3) to maintain a high school at Lumber City. McRae is in the extreme northern perimeter of the county; Milan on the extreme northwestern perimeter of the county; and Lumber City is on the extreme southeastern corner of the county. The location of these three high schools is an arbitrary, capricious and unreasonable act on the part of the defendants without any regard for the geographical distribution of the high school students of the county, and they are neither located at places convenient to the pupils nor near the center of the school areas. The latter action is void and of no legal effect since the defendants thereby grossly abused their discretion and violated the school laws of Georgia. Such latter action was an effort by the defendants to revoke and vacate final decisions and judgments theretofore made by the Telfair County Board of Education and the State Board of Education; and, as a matter of law, the defendants had no power or authority to thus change, tear up and destroy the program first adopted. The prayers are for a rule nisi, process and service; that the defendants be restrained and enjoined from carrying out, putting into effect, or doing anything in furtherance of the action taken on August 31, 1954, including certification of it to the State Board of Education and the State School Building Authority; that defendants' decision of August 31, 1954, be canceled, set aside, and declared by decree to be void and of no effect; and for general relief. On October 21, 1954, J. T. Vaughn, and four others, as trustees of the Milan school, and Saxton Garrison, and several others, alleging themselves to be citizens, taxpayers, voters and patrons of Milan school, petitioned the court for leave to intervene in this litigation, alleging that they were interested in and would be affected by the result of it and for that reason desired to defend their rights. They prayed that they be made parties defendant and permitted to file defensive pleadings instanter. By an order which was granted on October 22, 1954, they were allowed to intervene and were made parties defendant, subject to the plaintiffs' right of demurrer and objection. They adopted the pleadings of the defendants and by an answer to the petition averred other and further reasons why the relief which the plaintiffs sought should not be granted. The plaintiffs demurred to the petition for leave to intervene on several grounds and moved to strike it. Their demurrers and motion to strike were overruled and they excepted to that ruling. The original defendants demurred generally on the following grounds: (1) the allegations of the petition as amended are insufficient in law and/or equity to authorize the relief sought; and (2) the plaintiffs have an adequate and complete remedy at law through a hearing before the Telfair County Board of Education as a school court and by an appeal from an adverse decision of the county board of education to the State Board of Education. The trial judge sustained their demurrers and dismissed the petition. To this judgment there is also an exception by the plaintiffs. *Held:*

1. The Constitution of 1945 (Code, Ann., § 2-6801) makes the county a single school district and vests in the county board of education complete control and management of the schools. See *Pass* v. *Pickens,* 204 *Ga.* 629 (51 S. E. 2d 405); *Burton* v. *Kearse,* 204 *Ga.* 765 (51 S. E. 2d 796). In its control and management of schools, the county board of education has broad discretionary powers. *Keever* v. *Board of Education of Gwinnett County,* 188 *Ga.* 299 (1) (3 S. E. 2d 886); *Colston* v. *Hutchinson,* 208 *Ga.* 559 (67 S. E. 2d 763), and citations. One or more high schools or junior high schools may be established in any county of this State by the county's board of education. Code § 32-933. But respecting the location of the high schools or junior high schools which a county board of education may establish in its county, the statute is completely silent as to the place or places therefor. In 1953, the legislature passed an act (Ga. L. 1953, Nov.-Dec. Sess., p. 282) which vests power in the county board of education to reorganize the schools in its jurisdiction and determine and fix the number of grades to be taught in each "if in their opinion" the welfare of the schools and the best interests of the pupils require it. Since a county board of education has complete control and management of the schools in the county and is empowered to reorganize them and fix the number of grades to be taught in each, action taken by it with respect thereto is not void and of no legal effect, though it may be erroneous. In this connection, see *Crutchfield* v. *State of Georgia,* 24 *Ga.* 335; *Duer* v. *Thweatt,* 39 *Ga.* 578, and citations.

(*a*) There is no merit in the contention that a county board of education exhausts its power to reorganize the schools of its county and determine and fix the grades to be taught in each when once it does so. Conditions affecting schools and the operation of them frequently change materially and it was unquestionably the intention of the legislature, by the school act of 1953, to give county boards of education power to so deal with their schools whenever, in their opinion, the welfare of the schools and the best interests of the pupils require it.

2. Code § 32-910 constitutes the county board of education a tribunal for hearing and determining all local controversies in reference to the construction or administration of the school laws; and when sitting as a court to hear and determine an issue over which it has jurisdiction, its decision is final unless an appeal therefrom is taken. See *Boney* v. *County Board of Education of Telfair County,* 203 *Ga.* 152 (45 S. E. 2d 442). And Code (Ann.) § 32-414 declares that "The State Board of Education shall have appellate jurisdiction in all school matters which may be appealed from any county or city board of education, and its decisions in all such matters shall be final and conclusive." Under article VI, section I, paragraph I, of the Constitution of 1877, the legislature was authorized to create these school courts or school tribunals and confer jurisdiction on them to hear and determine school controversies such as the one here involved. *Board of Education of Long County* v. *Bd. of Ed. of Liberty County,* 173 *Ga.* 203 (159 S. E. 712); *Boatright* v. *Yates,* 211 *Ga.* 125 (84 S. E. 2d 195). And this court has repeatedly held that equity will not interfere with the management of schools unless it clearly appears that the board has acted without authority of law. *McKenzie* v. *Walker,* 210 *Ga.* 189 (78 S. E. 2d 486),

and citations. Being dissatisfied with the action which the defendants took on August 31, 1954, the plaintiffs had a legal right to file their objections thereto with the county board of education and have them heard by it while sitting as a court; and if that board had decided against them upon the testimony submitted, they had the right of appeal to the State Board of Education as a reviewing tribunal. *Meadows* v. *Board of Education of Paulding County,* 136 *Ga.* 153 (71 S. E. 146); *Boney* v. *Board of Education of Telfair County,* supra. Equity will not take cognizance of a plain legal right, where an adequate and complete remedy is provided by law. *Burress* v. *Montgomery,* 148 *Ga.* 548 (2) (97 S. E. 538); Code § 37-120. The petition alleged no cause of action, and the court did not err in sustaining the demurrers and dismissing the action. It is not necessary to pass on the other question presented by the writ of error.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., Wyatt, P. J., and Head, J., who dissent.*

ARGUED APRIL 11, 1955—DECIDED MAY 10, 1955—REHEARING DENIED JUNE 15, 1955.

*Carl K. Nelson, Nelson & Nelson,* for plaintiffs in error.
*W. S. Mann, J. K. Whaley,* contra.