20318. SMITH *et al. v.* MAYNARD *et al.*

CANDLER, Justice. In 1953 the Barrow County Board of Education entered into two contracts with the Board of Education of the City of.Winder, by the terms of which the latter board agreed to teach or instruct certain school children of the county, both white and colored, residing outside of the area embraced within the City of Winder's independent school system for a period of twenty-five years. One of the contracts relates exclusively to all such white children in grades 9 through 12; the other one relates exclusively to all such colored children in grades 1 through 12. Paragraph 2 and 2a of each contract is the same and reads as follows: "The Winder City School Superintendent shall report to the Barrow County School Superintendent the attendance figures and other needed or required information concerning those county children who attend school in Winder. Barrow County Board of Education will receive from the State of Georgia the teacher allotment earned by the Barrow County children who attend school in Winder. Barrow County Board of Education will in turn pass this same teacher allotment on to the Winder City Board of Education. (a) Barrow County Board of Education will receive from the State of Georgia the maintenance and oper-

ation funds as set by the State Board of Education for that purpose. Barrow County Board of Education will pass on to the Winder City Board of Education all maintenance and operation funds received from the State of Georgia on the pupils and teachers assigned by the Barrow County Board of Education to the Winder city schools. Barrow County Board of Education will assume the charge-back on these funds and pass the gross amount of state funds to the Winder City Board of Education." During October, 1957, a controversy arose between the two boards respecting the amount of school funds which the county board should pass on to the city board under the terms of the two contracts; and the several named members of the City of Winder's Board of Education in their official and representative capacity as such, Mark Sims as treasurer of the City's Board of Education, and the City of Winder, a municipal corporation, brought mandamus against the several members of the county board of education in their official and representative capacity and against P. T. Barrett in his official and representative capacity as County School Superintendent of Barrow County, to compel them to comply with the terms of the contracts. The amended petition alleges: For the school year 1957-58 the State Department of Education approved a school system budget amounting to the gross sum of $374,254 for the schools in Barrow County outside of the area embraced within the City of Winder's independent school system; and respecting the amount so approved, it found and determined by using the formula provided by Code (Ann.) § 32-615 that the local school unit was financially able to and should pay $23,249 of it, which last mentioned amount is referred to by school authorities as a "charge-back" to the local unit; and that the State should pay $351,005 as the balance of the allotment. Of the gross amount so approved for such local school unit, $225,936 was allotted for the payment of salaries to the unit's 72 teachers; $30,096 was allotted for current operating expenses; and $24,055 was allotted for a contingent or equalization fund. Under the contracts and for the school year involved, the county board assigned thirteen white teachers to the Winder-Barrow High School in the city board's system, and fifteen colored teachers to the city's Glenwood Negro School, and during February, 1958, it assigned another colored teacher to such negro school, making a total of twenty-nine teachers so assigned. In com-

pliance with the contracts, the county board monthly passed on to the city board the gross amount allotted for teachers' salaries applicable to those teachers assigned to the City of Winder's schools. On April 11, 1958, the county board, through its treasurer, forwarded seven checks aggregating $8,255.50 to the treasurer of the city board as the gross amount allotted for current expenses applicable to the twenty-nine teachers assigned to the city board's schools; but since the checks, and the letter transmitting them, recited that they were in full payment of all amounts due the city board by the county board under the two teaching contracts, they were not cashed but were returned, and the county board is still due this undisputed amount to the city board. For the school year involved, the county board was required to instruct and furnish school facilities to 1,752 white and colored pupils; and of this total number the city board, under the two teaching contracts, instructed and furnished school facilities to 674 of them based on an average daily attendance. For this service the city board, in addition to the amounts previously mentioned, is entitled under the two teaching contracts to its proportionate part of the gross amount allotted to the county board as a contingent or equalization fund, namely $24,055, on the ratio which the number of teachers and pupils assigned to it bears to the total number of teachers and pupils in the county board's school system for the school year involved; but its right to have the county board pass on to it the contract part of this particular fund should be fixed as of December 3, 1957, since the city board's school buildings and facilities were not fully completed and supplied until a date subsequent to the one on which the contracts were executed, and the city board's right under the contracts to have its proportionate part of this fund was waived until the aforementioned date (December 3, 1957). There is a prayer for mandamus absolute, requiring the county board to pass on to the city board the balance due it under the contracts. The amended petition was demurred to generally on the grounds that it failed to state a cause of action for the relief sought, and that the amended petition shows on its face that the plaintiffs are seeking to enforce a written contract by mandamus when they have an adequate and complete remedy at law, namely, a suit on the contract. The demurrers were sustained and there is an exception to that judgment. *Held:*

1. No attack is made on the validity of the two teaching contracts here involved, and concededly they were made by the contracting parties pursuant to constitutional authority. See Code (Ann.) §§ 2-5901, 2-7201. As shown by our statement of the case, the City of Winder's Board of Education contends that the Barrow County Board of Education is required under the contracts to pass on to it, in addition to the amounts which have been paid or tendered to it, a specified portion of the contingent or equalization funds which the State Department of Education allotted to the county board for the school year involved; and respecting the contracts, this is the only part of the funds allotted to the county board about which there is any controversy between the parties. To ascertain the meaning of these contracts or the portions thereof which are involved in this litigation, they must necessarily be considered in connection with the State's school laws, and especially an act which was passed in 1949 (Ga. L. 1949, p. 1406), providing for a minimum-foundation program of education in this State, and under the act of 1949, as a reading of it will reveal, broad powers respecting our education program are vested in the State Board of Education, many of which are discretionary in character. In each local unit, the number of teachers needed and allowable is determined and fixed for each school year by the State Board of Education on the basis of the number of pupils who were in average daily attendance during the preceding school year per square mile of territory served by the unit; but this is not an inflexible formula, and the board may, in its discretion, vary it when special circumstances make such a variation necessary or advisable. Code (Ann.) § 32-607. And under the provisions of Code (Ann.) § 32-612, the State Board of Education is required to allot annually to each local school unit an amount of funds to take care of current expenses not provided for in Code (Ann.) §§ 32-607 to 32-611. The amount which it must allot annually to each school unit for such purpose is determined by multiplying the number of teachers allowed the unit under § 32-607 by a sum of money to be determined by the State board. However, the amount determined and fixed by it cannot for any given school year be less than $300 per teacher allotted to the unit. By authority of this section, the State board determined the amount it allotted to the local county unit for such expenses, namely $30,096 by multiply-

ing the number of teachers allowed it, which was 72 for the school year involved, by $418. And section 26 of the 1949 school act (Code, Ann., § 32-630) provides: "The State Board of Education shall have authority to set up a contingent [or equalization] fund for the special purpose of relieving hardships which may be caused by the operation of this Chapter, and to take care of any unusual or unforeseen circumstances." Neither this section of the act nor any other provision of our school laws provides any standard or formula to guide the State board in ascertaining and fixing the amount of the fund which it is authorized to allot annually to a local school unit as a contingent or equalization fund. But, however ascertained and fixed by the State board, it is clearly an additional fund which the local school unit receives and uses for the maintenance and operation of its school system; and to be other than arbitrary action by the State board, it must be definitely related to the number of teachers and pupils which the local unit has. As previously pointed out, each contract involved in this case obligates and binds the county board to receive and pass on to the city board the gross amount of all maintenance and operation funds received from the State on the teachers and pupils assigned by the former board to the latter board. It is therefore our opinion that these two contracts obligate and bind the county board to pass on to the city board that proportionate part of the gross amount allotted to it as a contingent or equalization fund, namely $24,055, which the number of teachers and pupils assigned to the city board bears to the number of teachers and pupils in the county board's system for the school year involved.

2. There is no merit in the contention that mandamus is not an appropriate and available remedy in this case. "All official duties should be faithfully performed; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper performance, the writ of mandamus may issue to compel a due performance, if there shall be no other specific legal remedy for the legal rights." Code § 64-101. The allegations of the amended petition sufficiently show that the two local school units entered into valid and binding teaching contracts with each other, both of which were of force and effect during the entire school year involved; and, since the allegations of the amended petition show that the city board complied with its part of the contracts, it was the official duty

of the several members of the county board of education to comply with the board's part of the two contracts (*Trotzier v. McElroy,* 182 *Ga.* 719, 723, 186 S. E. 817); and, since a county board of education is not a natural person, a partnership, or a body corporate which can be sued (*Smith v. Board of Education of Washington County,* 153 *Ga.* 758 (2), 113 S. E. 147; *Verner v. Board of Education of Haralson County,* 203 *Ga.* 521, 47 S. E. 2d 500), mandamus is not only an appropriate remedy, but it is the only remedy available to the plaintiffs by which they can obtain a performance of the contracts. We have not overlooked or failed to consider the ruling in *Burke v. Board of Education of Wheeler County,* 182 *Ga.* 458 (185 S. E. 813), which is cited in the brief for the defendants in error and relied on as authority for their contention that the plaintiffs in this case have a specific legal remedy, and for that reason cannot apply for the writ of mandamus. There the applicant, doing business as Charles J. Burke & Co., an auditing firm, filed his petition for mandamus against the Board of Education of Wheeler County, each of its members in their official and representative capacity, and a named person as superintendent of schools of the county, alleging that the defendants were indebted to him in a stated amount on a contract they made with him for auditing services. His petition was dismissed on demurrer, and on review this court, in affirming the case, held: "If the applicant shows that the parties could make the contract in question, he has a right of action against the defendants to recover the amount due him under the contract, and can maintain an action at law for that purpose. In such a suit the plaintiff has an adequate remedy at law; and the writ of mandamus does not lie where there is another remedy." The holding in *Burke's* case is in conflict with the unanimous decision of this court in the older case of *Smith v. Board of Education of Washington County,* 153 *Ga.* 758, supra, where it was held that a county board of education is not a body corporate with authority to sue and be sued, in the ordinary sense. And since *Burke's* case was decided, this court has in several cases followed the ruling in *Smith's* case. For some of these cases, see *Verner v. Board of Education of Haralson County,* supra, and the cases there cited. *Burke's* case is not therefore a binding precedent, and it cannot, for the reason above stated, be here followed.

3. For the reasons stated in divisions 1 and 2 above, it necessarily follows that the trial judge erred in sustaining general demurrers to the amended petition.

*Judgment reversed. All the Justices concur.*

Argued January 12, 1959—Decided March 6, 1959.

*J. N. Rainey,* for plaintiffs in error.
*Marvin D. Pierce, Jr.,* contra.