Mrs. Thelma DAVIS

v.

**GRIFFIN-SPALDING COUNTY, GEORGIA, BOARD OF EDUCATION et al.**

**Civ. A. No. C-75-6-N.**

United States District Court,
N. D. Georgia,
Newnan Division.

Order Dec. 2, 1975.

On Determination of Appropriate
Relief April 15, 1976.

Powell, Goldstein, Frazier & Murphy, Atlanta, Ga., for plaintiff.

Jones, Bird & Howell, Atlanta, Ga., for defendants.

## ORDER

HENDERSON, Chief Judge.

This is an action for injunctive and declaratory relief and damages arising out of the alleged forced retirement of the plaintiff as a teacher with the defendant school board. Presently pending are the plaintiff's and defendants' cross-motions for summary judgment.

The suit is brought pursuant to the provisions of 42 U.S.C. §§ 1983 and 1985 and jurisdiction is predicated on 28 U.S.C. §§ 1343(3) and (4) and 1331. The complaint is in four counts. Count One attacks the local board's policy of requiring its teachers to retire at age sixty-five as being retaliation of the plaintiff's exercise of her First Amendment rights. Count Two alleges that her termination deprived her of a protectible "property" interest within the meaning of the Fourteenth Amendment. Count Three charges that the mandatory retirement age in this context is an infringement of the Fourteenth Amendment. Count Four asserts the pendent jurisdiction of the court for a purported violation of state law. The plaintiff seeks reinstatement to her teaching position and back pay.

By profession, the plaintiff is a reading specialist and elementary education teacher. From 1952 through the 1973–74 academic year, she was continuously employed by the defendant, the Griffin-Spalding County Board of Education (hereinafter referred to as "the school board").

In February, 1974 the school board adopted a mandatory retirement policy for its teachers, effective July 1, 1974, which provides:

1. Teachers who reach sixty-five (65) years of age shall be retired from the Griffin-Spalding County School System, unless exception is made as hereinafter provided. If the sixty-fifth birthday occurs during a school year, the teacher may finish that school year; however, no teacher shall begin a new school year if the sixty-fifth birthday is reached before the new school year begins.

2. Exceptions may be made to allow a teacher when under unusual circumstances pertinent to continuing employment, to request a meeting with the Board of Education to present these reasons. The Board must also receive recommendations from both the superintendent and the principal of the school involved.

3. The Board of Education may initiate and grant such an exception in an individual case where the teacher's specific and unusual services warrant continuing employment for the benefit of the school system. The Board must also receive such recommendations from both the superintendent and the principal of the school involved.

4. The exceptions cited in items 2 and 3 above will be on a year-to-year basis.

. . . . .

6. Employment may not be granted to any teacher who is sixty-five years of age or older at the time this policy becomes effective, unless an exception is made as hereinbefore provided.

The plaintiff reached age sixty-five in 1971. She was offered and accepted subsequent one-year employment contracts for the next three academic years. Shortly after the new policy was adopted, she was notified that her contract would not be renewed for the 1974–75 school year. She requested a hearing in May, 1974 but the

**1050**

school board reaffirmed its initial decision in a meeting the following month. Since the plaintiff was effectively retired after the school board declined to rehire her in June,[1] she applied for retirement benefits which began in August of that year. None of the checks were cashed until November, 1974 when the plaintiff received assurances from the Teachers Retirement System that acceptance of retirement payments would not prejudice her right to contest the board's action.

Three of the four counts of the complaint are founded on federal law and subject matter jurisdiction exists solely under 28 U.S.C. §§ 1343(3) and (4) and 1331. The constitutional issues need not be decided in this order because the state cause of action stated in Count Four is dispositive of the suit.

■ Pendent jurisdiction is a judicially created doctrine which permits a federal court to assume jurisdiction over a state claim not supported by independent jurisdictional grounds. See *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). As expanded and clarified in *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966):

> [p]endent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim "arising under [t]he Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *," U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. . . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be ex-

> pected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*Id.* at 725, 86 S.Ct. at 1138 (footnotes and citations omitted).

There is no question that Count Four is factually inseparable from the "case" when viewed as a whole and is a situation "where two distinct grounds in support of a single cause of action are alleged, only one of which presents a federal question . . ." *Hurn v. Oursler, supra,* 289 U.S. at 246, 53 S.Ct. at 589. Further, this is exactly the case where a litigant, without regard to the state or federal nature of the complaint, "would ordinarily be expected to try them [claims] all in one judicial proceeding." 383 U.S. at 725, 86 S.Ct. at 1138. It follows then, that jurisdiction of Count Four must necessarily turn on the "substantiality" of the plaintiff's constitutional attacks.

In the context of 28 U.S.C. § 2281 a claim is insubstantial only if "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Ex parte Poresky,* 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933). See *Goosby v. Osser,* 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed. 36 (1973). In light of *Gibbs,* therefore, the state question may be properly entertained if this test is met.

Without reaching the merits of Counts One, Two or Three, in no sense can the plaintiff's challenges be considered as "obviously without merit." 290 U.S. at 32, 54 S.Ct. 3. On the contrary, there appears to be authority to support the due process arguments. Moreover, the entire concept of mandatory age qualifications for public employment has prompted the Supreme Court to inquire into their constitutional implications. *Murgia v. Massachusetts Board of Retirement,* 376 F.Supp. 753

---

1. The defendants strenuously argue that the plaintiff waived her rights to challenge the policy between the time of notification in February, 1974 and her formal request for a review hearing in May, 1974. The proposition is not tenable. Not only were the procedural mandates of Ga.Code Ann. § 32–607.1(g) (Supp.1974) ignored, but the defendants were well aware of the plaintiff's position in May, 1974 prior to the time all available teaching positions were filled.

(D.Mass.1974), prob.juris. noted, 421 U.S. 974, 95 S.Ct. 1973, 44 L.Ed.2d 466 (1975).

*Gibbs* expressly permits the district courts to decline jurisdiction of a state claim if the twin goals of "judicial economy, convenience and fairness to litigants" would not be furthered. 383 U.S. at 727, 86 S.Ct. at 1139. See 6 Wright & Miller, *Federal Practice and Procedure*, § 1588. However, in order to avoid needless duplication of judicial effort and to prevent undue delay in rendering the prayer for injunctive relief, the substance of Count Four will be considered. *Siler v. Louisville & Nashville R. R.*, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909). See, *e. g., Hillsborough v. Cromwell*, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946); *United Fuel Gas Co. v. Railroad Comm'n*, 278 U.S. 300, 49 S.Ct. 150, 73 L.Ed. 390 (1929); *Waggoner Estate v. Wichita County*, 273 U.S. 113, 47 S.Ct. 271, 71 L.Ed. 566 (1927). The soundness of this approach was recently reaffirmed by the Supreme Court in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

The plaintiff contends that the school board's retirement plan is not authorized by state statute and violates Georgia's public policy. On the other hand, the defendants argue that the rule is not prohibited by state law and therefore permissible.

Each county is authorized to establish a county board of education. Ga.Const., art. VIII, § 5. These boards are charged with promulgating rules to govern the schools within their jurisdiction. Ga.Code Ann. § 32–912 (Supp.1974). Of necessity, though,

the authority of the local boards must yield to state supervision and the General Assembly has demonstrated its intention to exercise control over local matters.[2] The State Board of Education sets minimum qualifications for teaching personnel. Ga.Code Ann. § 32–662a (Supp.1974). Through disbursement of funds to local schools the legislature effectively regulates minimum teacher salaries, Ga.Code Ann. § 32–609, and pupil-teacher ratios. Ga.Code Ann. § 32–611 (Supp.1974). All teachers must first obtain a certificate from the State Board of Education before seeking employment in any school system. Ga.Code Ann. § 32–608.

■ A persuasive indication of the local boards' limited authority to set individual retirement policies is contained in the Georgia Teachers Retirement System (hereinafter referred to as "the retirement system"). Ga.Code Ann. §§ 32–2900, *et seq.* This statutory program provides for optional and compulsory retirement benefits for state teachers. In relevant part, the eligibility portions specify:

(a) Any member in service *may retire* upon written application to the board of trustees . . . .

(b) Any member in service who on the commencement date has attained the age of 70 or who thereafter attains age 70 *shall be retired forthwith* on a service retirement allowance at the close of the school year. . . . However, in exceptional circumstances, where any county or independent board of education may deem it necessary for the efficient operation of its school system, it may, in its

---

2. .The defendants contend that the local school boards are granted wide discretion in managing their affairs and "unless it is made clearly to appear that they are acting in violation of law or grossly abusing their discretion, their conduct of the schools of the counties will not be enjoined by the courts." *Keever v. Board of Education*, 188 Ga. 299, 302, 3 S.E.2d 886, 889 (1939). There is no question that school boards are given wide latitude in the areas of student conduct, organization and management as pointed out by the defendants. E. g., *Davis v. Jarriel*, 223 Ga. 624, 157 S.E.2d 282 (1967) (reorganization); *Warren v. Davidson*, 218 Ga. 25, 126 S.E.2d 221 (1962) (construction); *Patterson v. Boyd*, 211 Ga. 679, 87 S.E.2d 861

(1955) (reorganization); *McKenzie v. Walker*, 210 Ga. 189, 78 S.E.2d 486 (1953) (construction); *Colston v. Hutchinson*, 208 Ga. 559, 67 S.E.2d 763 (1951) (transfer of pupils). No cases have been cited, however, to establish the local boards' authority in retirement matters. Rather, given the extensive regulation of retirement by law the local school boards, existing only by virtue of the state constitution, must be restricted to those powers either expressly granted or necessarily implied by statute. Their composition and function are extensively regulated by the state. See Ga.Code Ann., Tit. 32, ch. 9. None of the cases cited by the defendant demand a contrary conclusion.

discretion, allow teacher members of the retirement system in its respective school system to remain in service for a period not to exceed three years from the date such teacher member of the retirement system attains the age of 70 years, and such teacher member of the system upon reaching the age of 73 shall be retired forthwith on service retirement allowance under the provisions of this Chapter, unless such member received written approval from his employer to complete the school, contract, or fiscal year . . . . (emphasis added).

Ga.Code Ann. § 32–2905(1)(a), (b) (Supp. 1974). Under this retirement scheme, a teacher may elect to retire before age seventy but is not compelled to do so and the local boards of education may only extend the mandatory retirement age "in exceptional circumstances" to age seventy-three. Local boards cannot lower the mandatory retirement age and to imply this power would undermine the operation of the system because a teacher's benefit level is directly related to the number of years of service. See Ga.Code Ann. § 32–2904.

The defendants insist that the state retirement system is merely a self-contained benefit plan, see Ga.Code Ann. § 32–2902, and does not affect the control of the local boards of education. The opposite appears to be true, however. It is by virtue of the state retirement system that the local boards are permitted to extend the maximum retirement age to seventy-three and that law provides the only statutory basis for the admitted state-wide mandatory retirement age of seventy.

Other courts facing the inter-relationship between state retirement laws and local board power have reached a similar conclusion. In *Cole v. Town of Hartford School Dist.*, 131 Vt. 464, 306 A.2d 101 (1973), Vermont authorized benefits as early as age sixty but not beyond seventy. The court there held that the state's expressed public policy prevailed over the local school board's right to set a lower mandatory age. Accord, *Herzig v. Board of Education*, 152 Conn. 144, 204 A.2d 827 (1964).

The most persuasive argument, though, is found in the state statute relating to suspension, termination and nonrenewal of teacher contracts, Ga.Code Ann. § 32–607.1 (Supp.1974),[3] which was applicable when the plaintiff's claim arose. A school board was authorized to suspend or terminate a teacher only for eleven enumerated reasons.[4] Ga.Code Ann. § 32–607.1(a). Even then, statutorily prescribed procedures were required to be followed before taking action. Ga.Code Ann. § 32–607.1(b).

Nonrenewal cases were divided into two categories depending on the length of the teacher's service and the most protection was afforded to one who had compiled at least three years continuous service with one local school system. Ga.Code Ann. § 32–607.1(f), (g). A teacher who fitted into this latter group could be terminated only upon written notification with a right to reasons based on "good and sufficient cause" and a hearing. Ga.Code Ann. § 32–607.1(g).[5]

---

**3.** Ga.Code Ann. § 32–607.1 (Supp.1974) embodies the 1974 amendment to Ga.Laws 1973, p. 907. Ga.Laws 1974, p. 1104. It was repealed in its entirety and a new law substituted in 1975. Ga.Laws 1975, p. 360.

**4.** Nonperformance of duty; incompetency; immorality; inefficiency; conviction of any crime involving moral turpitude; failure or refusal to comply with all reasonable orders, requests, or directions of the superintendent or other superior officer; violation of any rule or regulation of the local board of education; persistent failure or refusal to maintain orderly discipline of students; inciting, encouraging or counselling students to violate any valid State law, municipal ordinance or policy or rule of the local

board of education; revocation by competent state authority of the certificate of the teacher or other certified personnel; and violation of any contract provision.

**5.** Current Georgia law, Ga.Laws 1975, p. 360, does not appear to have made any major change in this requirement. A teacher with three or more years continuous service is still entitled to written reasons for the nonrenewal of the contract and an opportunity to request a hearing. Section 3. Written notice of reasons must be provided to the teacher ten days before any scheduled hearing and must specify, inter alia, the "cause or causes for his discharge . . . in sufficient detail to enable

There is no dispute that the plaintiff's contract was not renewed solely because she came within the terms of the mandatory retirement policy. Although the rule permits exceptions upon recommendation of both the principal and superintendent, it effectively relieves the school board from furnishing "good and sufficient cause" for their decision. The board's decision cannot be challenged because it is not based on an individualized determination that the teacher should not be offered reemployment. In this situation the notice, hearing and appeal procedures mandated by the statute are superfluous and the board's decision, based solely on a blanket policy, is, in reality, unreviewable. It is precisely because this regulation bypasses the board's responsibility of making a decision in each case of "good and sufficient cause" that it conflicts with statutory requirements.

There is no implication from this analysis that age qualifications are unconstitutional per se.[6] It is admitted that age may well be a relevant factor in determining a teacher's continued fitness for classroom duties. The plaintiff prevails in this case because Georgia law deprives the local school boards of the right to promulgate an inconsistent retirement policy.

Accordingly, the defendants' motion for summary judgment is denied and the plaintiff's motion for summary judgment is granted. The plaintiff is directed to submit a proposed judgment within ten (10) days of the filing of this order and the defendants may respond within ten (10) days thereafter.

### ON DETERMINATION OF APPROPRIATE RELIEF

This is an action for injunctive and declaratory relief and damages arising out of the forced retirement of the plaintiff as a teacher with the defendant school board. By order of December 2, 1975 summary judgment was granted in favor of the plaintiff under her pendent state cause of action. What remains for decision is that of appropriate relief and the entry of judgment.

Summary judgment was granted to the plaintiff on the ground that the state's extensive regulation of local employment and retirement policies deprived the defendant school board of the authority to exercise their right. While the plaintiff sued the school board members in both their official and individual capacities, the December 2nd order can logically be read to reach them only in their official capacities.

Relief depends on the two related concepts of (1) the capacity of the school board to be sued and the defense of governmental immunity and (2) the Eleventh Amendment as a bar to a suit against the state.

Under Georgia law a school board does not have the capacity to be sued except by special act of the legislature. See *Smith v. Maynard,* 214 Ga. 764, 107 S.E.2d 815 (1959); *Duffee v. Jones,* 208 Ga. 639, 68 S.E.2d 699 (1951); *Foster v. Cobb County Board of Education,* 133 Ga.App. 768, 213 S.E.2d 38 (1974). Although the plaintiff urges that the legislation establishing the school board grants the power to sue and be sued (Plaintiff's Reply Brief at 15–16), this is clearly not the case. Nowhere in the special enactment creating the school system, Ga.Laws 1953, p. 2563 (Jan.-Feb. Session), or in any subsequent amendment, Ga. Laws 1953, p. 2007 (Nov.-Dec. Session); Ga. Laws 1955, p. 2775; Ga.Laws 1972, p. 2418, does the General Assembly designate the school board as a body corporate. It is apparent, therefore, that the board lacks authority to initiate or to respond to litigation. See Rule 17(b), Fed.R.Civ.P.

The challenge to the capacity to sue or be sued, however, must be made at the initial stages of the litigation or be deemed

---

him fairly to show any error that may exist therein . . . ." Section 1(b). The "causes" justifying termination or discharge have also been redrafted and now add the ground, "[f]or any other good and sufficient cause." Section 1(a)(8).

**6.** Although Count Three of the complaint contends that mandatory age retirement policies are unconstitutional it is noted that the plaintiff restricts her attack to the school board's local rule and does not undertake to question the state-wide mandatory age limitation.

waived. Rule 9(a), Fed.R.Civ.P. See 5 Wright & Miller, *Federal Practice and Procedure*, § 1295. Since the school board has not previously raised this issue and liability has already been assigned, it may not now do so. See 2A Moore's *Federal Practice*, ¶ 9.02. Consequently, for the purpose of this action, the school board will be considered as a body corporate. In this sense, the defense of governmental immunity, the consent of the state to be sued, must also be considered waived. Governmental immunity, by its nature, is waived when the state creates a suable entity.

■ Even though the school board may be amenable to suit, this does not dispose of the Eleventh Amendment bar to damages claims against the state. The Eleventh Amendment restricts the *power* of the federal courts to order retroactive monetary relief against a state. See *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). It is, in effect, the prohibition of an award of damages which must be paid out of the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ The primary remedy sought by the plaintiff is back pay.[1] Whether such an award runs afoul of the Eleventh Amendment requires a determination of the use of state funds. See *Adams v. Rankin County Board of Education*, 524 F.2d 928 (5th Cir. 1975); *Harris v. Tooele County School Dist.*, 471 F.2d 218 (10th Cir. 1973). This judgment can be made only by looking to the powers, characteristics and relationships imposed by Georgia law on the school board. *Hander v. San Jacinto Junior College*, 519 F.2d 273, 279 (5th Cir. 1975).

Both parties concede that the state furnishes a majority of the money for the local school system although they differ on the exact percentages. The financing program, Ga.Code Ann. §§ 32–601a, *et seq.* (Supp. 1975),[2] provides comprehensive control over the use of resources supplied by the state. The school board also has the power to raise its own funds and to borrow money, Ga. Code Ann. §§ 32–909, –921, and receives grants from the federal government.

Local tax revenues, though, are restricted by state law and must be used only for "educational purposes." *Sheley v. Board of Public Education*, 132 Ga.App. 314, 208 S.E.2d 126 (1974), *cert. dismissed*, 233 Ga. 487, 212 S.E.2d 627 (1975) (where the court held that a wrongful death action did not fit within the definition of "educational purpose"). See also *Board of Education v. Bates*, 114 Ga.App. 343, 151 S.E.2d 524 (1966). On the other hand, there is no such limitation on the use of monies for the payment of back salary to a teacher who has been wrongfully discharged even when, as in this case, the board lacks the capacity to be sued and the plaintiff is forced to proceed by mandamus.[3] See, *e. g., Morman v. Board of Education*, 218 Ga. 48, 126 S.E.2d 217 (1962). See also *Smith v. Maynard, supra.* Consequently, even though a majority of funds controlled by the defendant school board emanates from the state, it has sufficient sources of income to satisfy a judgment or the ability to raise it and also the authority to pay the plaintiff's back salary without transgressing state law.

The rationale behind an award for back pay is to compel the defendants to perform their official duties. See *Board of Education v. Young*, 187 Ga. 644, 1 S.E.2d 739

1. Although the federal cases designate back pay as equitable in nature, see *Hander v. San Jacinto Junior College*, 519 F.2d 273 (5th Cir.), rehearing denied, 522 F.2d 204 (5th Cir. 1975); *Harkless v. Sweeny Ind. School Dist.*, 427 F.2d 319 (5th Cir. 1970); *Amos v. McLean Trucking Co.*, Civ.No. C–75–660–A (N.D.Ga. Dec. 1975), this action is proceeding solely on the basis of state law. The major difference between the two is the right to jury trial, compare *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), with *Amos v. McLean Trucking*

*Co., supra*, and does not affect the propriety of a back pay award here. See *Edelman v. Jordan, supra.*

2. Repealing Ga.Code Ann. §§ 32–601 et seq., which provided a different program for funding public schools with similar restrictions on use of state monies.

3. This extraordinary remedy need not be invoked here because the school board cannot assert its lack of capacity as a defense.

(1939). Since the school board had no right to terminate the plaintiff's services, the act was a nullity, and it was still obligated to pay her salary. *Cf. Undercofler v. Scott,* 220 Ga. 406, 139 S.E.2d 299 (1964), *aff'd,* 220 Ga. 711, 141 S.E.2d 415 (1965).

The defendants urge that damages be mitigated and suggest that Social Security and retirement benefits be subtracted from her back salary. Damages in a legal or equitable sense are predicated on either compensating the plaintiff for the loss sustained or punishing the defendant. The theory of this case does not fit neatly into either category, see 8 *Encyc.Ga.Law,* Damages, § 113, and Georgia law provides no guidance on this issue.

■ Federal law permitting back pay is based on a theory of compensation, see e. g., *Wood v. Goodman,* 381 F.Supp. 413 (D.Mass. 1974); *Dause v. Bates,* 369 F.Supp. 139 (W.D.Ky.1973); *Bhargave v. Cloer,* 355 F.Supp. 1143 (N.D.Ga.1972), and requires deductions for any other income whenever its receipt would have been inconsistent with the former employment. See *Laugesen v. Anaconda Co.,* 510 F.2d 307 (6th Cir. 1975); *Jannetta v. Cole,* 493 F.2d 1334 (4th Cir. 1974); *Ramsey v. Hopkins,* 447 F.2d 128 (5th Cir. 1971); *Schulz v. Hickok Mfg. Co.,* 358 F.Supp. 1208 (N.D.Ga.1973). The plaintiff would not have received retirement or Social Security benefits had she not been discharged, but whether these sums should reduce a back pay award depends on her legal claim to them.

■ A retired teacher who has subsequently been restored to service may rejoin the Teachers Retirement System only upon reimbursing the system for benefits already received. Ga.Code Ann. § 32–2905(6)(c) (Supp.1975). A judgment in her favor would not have this effect and there is no authority to require her to pay back the benefits she has already accepted. Since her claim to these monies is absolute and inconsistent with her teaching position, her back salary must be reduced by the amount of these benefits.

The plaintiff's liability for Social Security, however, is entirely different, and there is a possibility, if not a probability, that she will have to reimburse the government for at least a part of the money she has already received. See 42 U.S.C. § 404(c); 20 C.F.R. §§ 404.501 *et seq.* Deducting these amounts in anticipation that repayment will not be demanded would deprive the Social Security Administration of its statutory discretion to recoup the sums to which it may be legally entitled and subject the plaintiff to a double liability.

■ In connection with her accrued but unpaid salary, the plaintiff also seeks the additional contributions to Social Security and the state retirement fund that would have been made if she had continued to teach until age seventy. These sums represent the difference between her present benefit entitlement and the levels she would have obtained if contributions had been made until the mandatory retirement age. She asks for $8,478.94, the sum of which equals the additional retirement benefits she would have received over her lifetime. A similar request is made for Social Security. Because these amounts would not, in regular course, be disbursed in one payment, there is no basis to deny the defendants' request that they be reduced to present value.

■ Attorney fees are an entirely different matter. Because relief is based on state law exclusively, it must be followed in considering attorney fees. *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).[4] Georgia law authorizes attorney fees for the prevailing party only where there has been a demonstration of maliciousness or bad faith, Ga.Code Ann. § 20–1404; 8 *Encyc.Ga.Law,* Damages, § 80. See *City of*

---

4. *Alyeska* manifests the federal policy of restricting the award of attorney fees. Even if federal law were applicable in this instance, the plaintiff would not be entitled to them. In spite of the "common benefit" argument, it would be inequitable to force the school board to bear the costs for an illegal policy apparently adopted by numerous other school boards within the state.

# 1056

Jesup v. Spivey, 133 Ga.App. 403, 210 S.E.2d 859 (1975); Thibadeau Co., Inc. v. McMillan, 132 Ga.App. 842, 209 S.E.2d 236 (1974); appeal dismissed, 233 Ga. 636, 213 S.E.2d 1 (1975). Such conduct has not been shown in this case.[5] City of Chamblee v. Bridges, 229 Ga. 304, 190 S.E.2d 914 (1972).

■ Finally, the plaintiff seeks reinstatement to her former teaching post. She does not dispute the fact that all teaching jobs have been filled for the current year and a court cannot order reinstatement to a position that does not exist. Moreover, the employment would terminate at the end of the academic year when the plaintiff would be retired at the mandatory age of seventy. Forcing the defendants to create a job for her with only a short period of time remaining in the current school term would undoubtedly cause confusion and disruption in the school. Although restoration to her former status is a primary element of the total remedy sought by the plaintiff, the back salary, interest[6] and accompanying collateral benefits[7] adequately compensate her for the injury so that reinstatement is not necessary. Cf. Board of Education v. Young, supra, 187 Ga. at 647, 1 S.E.2d 739.

In summary, the plaintiff may recover back pay in the amount of $10,744.40, with 7% interest to January 1, 1976, together with the costs of this action. She is also entitled to additional state retirement benefits reduced to a present value of $4,767.31. The plaintiff is directed to submit her calculations of pre-judgment interest reduced to a dollar figure and further proof of her Social Security benefits within fifteen (15) days from the filing of this order. The defendants, if they desire, may respond within fifteen (15) days thereafter. The clerk of court is ordered to resubmit the case at the expiration of that time.

5. The plaintiff bases her conclusion of bad faith primarily on the defendants' pursuit of an unsuccessful legal position. This contention is completely unsubstantiated as a matter of law.

6. Permitted by Georgia law, Ga.Code Ann. § 57–110. See Undercofler v. Scott, supra, 220 Ga. at 409–10, 139 S.E.2d 299. The plaintiff .

should have the opportunity to compute the correct amount and submit it to the court for approval.

7. The defendants dispute the amount of additional Social Security benefits to which the plaintiff is entitled, and she must therefore furnish additional proof to support this claim.