## STANDARD OIL COMPANY OF KENTUCKY *v.* STATE REVENUE COMMISSION.

372

No. 9882. August 13, 1934. Rehearing denied September 25, 1934.

*Spalding, MacDougald & Sibley, Sumter M. Kelley,* and *O. C. Hancock,* for plaintiff in error.

*M. J. Yeomans, attorney-general, John A. Smith, John T. Goree,* and *B. D. Murphy,* contra.

RUSSELL, C. J. The State Revenue Commission sued the Standard Oil Company of Kentucky, seeking to recover taxes alleged to be due the State under the provisions of the occupation privilege sales-tax act approved August 29, 1929 (Ga. L. 1929, pp. 103-117). The case was heard by the judge of the superior court on the pleadings and an agreed statement of facts, without the intervention of a jury. The court found in favor of the plaintiff, and rendered

judgment for the amount claimed in the petition. On this judgment the defendant assigned error.

The material facts appearing from the pleadings and agreed statement are as follows: The suit filed by the plaintiff claims $24,260.40 principal as due the State by the defendant as the tax on the gross proceeds of its sales of gasoline from October 1, 1929, through December 31, 1931, as follows: $12,887.57, being two mills on the dollar for its sales at retail; and $11,372.83, being one mill on the dollar of its sales at wholesale, as prescribed in section 4 of the act of 1919, supra. It was admitted that, other than the amount sued for, the defendant had paid the State all taxes due. R. C. Norman was State tax-commissioner prior to October 1, 1929, the effective date of the act of 1929, and by section 23 of this act the administration thereof was vested in him. He continued in office until August 22, 1931, at which time Paul H. Doyal succeeded him as State tax-commissioner, charged with the administration of said act. R. C. Norman issued a ruling to the effect that sales of gasoline did not come within the provisions of the tax act of 1929 on gross sales, and issued a form to be used by taxpayers in making returns under that act, upon which form the following language appeared: "Items not to be included in gross receipts. The following items are exempt from tax and should not be included in gross receipts: . . (d) receipts from the sale of gasoline." On November 2, 1931, Paul H. Doyal, tax-commissioner, issued a ruling reversing the previous ruling of his predecessor in office, by the following language: "The deduction provided in Item 6, subhead (d) 'receipts from the sale of gasoline,' as contained on the back of Form 100, is hereby annuled, as not being in accord with section 11 of the act approved August 29, 1929. The taxpayer should include in its return all receipts from the sales of gasoline, less the amount represented by the six cents per gallon paid as tax to the comptroller-general." Commissioner Doyal, in December, 1931, ordered all taxpayers engaged in selling gasoline to file a return showing all sales of gasoline made by each of them from October 1, 1929, to and including December 31, 1931, and to make payment to the State under the act of 1929, supra, in accordance with his ruling. The defendant filed a return under protest. Defendant admits that the amount claimed by the plaintiff is correct, provided the defendant is liable at all. The

price at which the defendant sold gasoline before and at the time of the passage of the act of 1929 and during the time said act was operative was and is now determined by the defendant. In arriving at the selling price of its gasoline the defendant gave consideration to the elements ordinarily entering into the fixing of the sales price of any commodity, including among others the cost of production, freight rates, competition, ad valorem and all other taxes.

As will be seen from the foregoing statement, the defendant denies liability for the tax demanded by the State tax-commissioner, but admits that if it is liable at all the amount demanded is correct.

 The rulings in headnotes 1 to 5, inclusive, require no elaboration.

 The occupation privileges sales-tax act of 1929 (Ga. L. 1929, pp. 103-117), is defined as "An act to provide for the raising of public revenue by a tax upon the privilege of engaging in certain occupations and by a tax upon certain business and commercial transactions and enterprises; to provide for the ascertainment and assessment and collection of such tax; to provide for an appeal and an appellate board; to provide penalties for the violation of the terms thereof; to provide for deductions and exemptions under this act; and for other purposes." Section 4 of the act lays a tax upon every person engaging or continuing within this State in the business of selling any tangible property whatsoever, real or personal, of two mills on the dollar of the gross receipts of the business; provided, however, that in the case of a wholesaler, jobber, or broker the tax shall be equal to one mill on the dollar of the gross receipts of the business. In our opinion this section, without any doubt, lays a tax upon the wholesale and retail selling of gasoline. The tax is laid upon the proceeds of *all tangible property, real or personal*. Gasoline is tangible personal property. The plaintiff in error, however, contends that the proceeds of the sale of gasoline are exempted from the operation of the act of 1929, by section 11, which provides: "The tax on retail sales of gasoline shall not be included in nor affected by this act, but the same shall remain under and be controlled by the act of the General Assembly approved August 24th, 1927, and amendatory acts thereto." We can not concur in this contention. The statement of section 11 is that the "tax" on retail sales of gasoline shall not be affected by the sales tax act of 1929. The legislature knew, when it passed the sales

tax act, that there was then in existence a six cents per gallon tax on sales of gasoline. So the General Assembly very plainly intended, by the language used, that the six cents gasoline tax should not be affected by the sales-tax act, but should continue under the act of 1927 as amended. It is immaterial that under the act of 1927 the gasoline tax was only four cents. A reading of sections 4 and 11 of the act of 1929 in question, in connection with the exemptions expressly allowed under sections 4 and 10, demonstrates the correctness of the position taken by the State. It is an accepted principle that the interpretation of a statute is excluded when none is needed. As said by Judge Nisbet in *Neal* v. *Moultrie,* 12 *Ga.* 104, 110: "If the legislature does plainly and distinctly declare its intention, the act is not open to construction; it needs and can receive none. It stands self-interpreted, and courts have nothing to do but to enforce it. The exclusion of interpretation, where none is needed, may be stated to be, notwithstanding the absurdity which it involves, the *first rule of construction.*" The rule just stated was quoted with approval in *Atkins* v. *State,* 154 *Ga.* 540, 542 (114 S. E. 878), and in *Georgia Casualty Co.* v. *Jones,* 156 *Ga.* 664, 666 (119 S. E. 721). Section 4 of the act herein involved is in language plain, clear, and unambiguous, and subjects the defendant to the liability sought to be enforced in the case at bar. The statement of the subjects exempted works an exclusion of any others. The maxim inclusio unius exclusio alterius clearly excludes proceeds from the sale of gasoline from the operation of any exemption. If the significance of section 11 were doubtful as to whether such proceeds were exempt, the rule that exemptions from taxation can not be claimed unless they are express, and that words of doubtful meaning must be strictly construed in favor of the sovereign State, must be applied.

Counsel for the plaintiff in error strenuously insists that the rule adopted by Commissioner Norman in 1929 is conclusive on the question involved in this case. It is insisted that he was authorized to formulate and publish rules. In other words, that by the action of Commissioner Norman the tax-commissioner is estopped to demand the tax in question in this case. Section 23 of this act provides: "The administration of this act is vested in and shall be exercised by the State tax-commissioner, who shall prescribe the forms and reasonable rules of procedure in conformity with this

act for making of returns and for the ascertainment, assessment, and collection of the taxes imposed hereunder; and the enforcement of any of the provisions of this act in any of the courts of the State shall be under the exclusive jurisdiction of the tax-commissioner." The power to prescribe, formulate, and make rules carries with it the power to alter, vary, annul, or abolish such rules or regulations. The language of the Civil Code, § 303, is that "Powers of all public officers are defined by law, and all persons must take notice thereof. The public can not be estopped by the acts of any officer done in the exercise of a power not conferred." This court held, in *Alexander* v. *State*, 56 *Ga.* 478 (7), that "The State can only be estopped from asserting her right to her own property by legislative enactment or resolution." The rule was again stated in *State* v. *Paxon*, 119 *Ga.* 730 (46 S. E. 872), and in *Booth* v. *State*, 131 *Ga.* 750, 759 (63 S. E. 502). The language of these decisions and of the code section show that the State is bound only by its laws, and every one must take notice thereof and recognize that public administrative officers can not change the laws. Departmental regulations, if in conflict with the law, must yield. The rulings of departmental and executive officers are at best persuasive, and may be of great force in cases of doubt. As said in 59 C. J. 1030, § 610, the application of the rules "in regard to executive construction should be restricted to cases in which the meaning of the statute is really doubtful, and the courts are not bound to follow, or justified in following, an executive construction which is clearly erroneous." In support of the rule just stated, Corpus Juris cites numerous cases from the Supreme Court of the United States and the courts of California, Illinois, Indiana, Kentucky, New York, Pennsylvania, West Virginia, and Wisconsin. In Louisville & Nashville R. Co. *v.* U. S., 282 U. S. 740, 759 (51 Sup. Ct. 297), the Supreme Court of the United States said: "Long-continued practice and the approval of administrative authorities may be persuasive in the interpretation of doubtful provisions of a statute, but can not alter provisions that are clear and explicit when related to the facts disclosed. A failure to enforce the law does not change it. The good faith of the carriers in the transactions in the past may be unquestioned, but that does not justify the continuance of the practice." The rule laid down by Judge Nisbet in *Neal* v. *Moultrie*, supra, was recognized by the

Supreme Court of the United States in U. S. *v.* Missouri Pacific Railway Co., 278 U. S. 269 (49 Sup. Ct. 133), as follows: "Where the language of a statute is plain and unambiguous, there is no room for construction. Even if inconvenience and hardships result from following the statute as written, construction may not be substituted for legislation to relieve them. . . Where the language of a statute is clear and does not lead to absurd or impracticable consequences, its legislative history may not be used to support a construction that adds to or takes from the significance of the words employed." The court did not err in its finding for the plaintiff.

*Judgment affirmed. All the Justices concur, except Gilbert, J., absent for providential cause.*