23557. INGRAM et al. v. PAYTON et al.

504

Argued June 15, 1966—Decided September 8, 1966—
Rehearing denied September 22, 1966.

*Thomas O. Davis,* for appellants.

*Arthur K. Bolton, Attorney General, Alfred L. Evans, Jr., Assistant Attorney General, Murphy Candler, Jr.,* for appellees.

*A. C. Latimer, J. Lee Perry, Sutherland, Asbill & Brennan, James P. Groton, Clay C. Long,* for parties at interest not parties to record.

Almand, Justice. In 1964 the Georgia General Assembly enacted a law entitled "Minimum Foundation Program of Education Act" (Ga. L. 1964, pp. 3-49). Section 2 of this Act expressed the legislative intent. "The General Assembly of Georgia, recognizing the importance and extreme necessity of providing improved educational opportunity for all Georgians—children, youth, and adults; of establishing equality of educational opportunity for Georgia's children and youth regardless of where they may live or what their station in life may be; of establishing and maintaining minimum standards for public schools so that every Georgia child and youth can attend an accredited public school; of improving the quality of education through continued development and improvement of balanced programs designed to provide academic and occupational preparation of Georgia's children and youth for adult life in this age; of developing a public school program that will attract, hold

and fully utilize competent professional personnel in the public school systems of this State; of establishing and maintaining adequate planning, research and experimentation programs so as to assure continued future improvement of public school education in Georgia; of providing for better efficiency in the operation of public schools, elimination of waste, and better utilization of existing school services and facilities; of the need to finance adequately the improvement of Georgia's public education program and facilities; of the need to assure Georgia's children and youth of receiving an improved minimum level of education; and of the need for providing a method whereby all Georgians shall pay their fair share of the cost of such program, and recognizing fully its responsibility to provide a means whereby the foregoing needs might more readily be met, does hereby establish a State Minimum Foundation Program for the education of Georgia's children and youth."

Section 6 provides that the several county, independent and area public school systems in Georgia shall be local units of school administration. Section 3 provides that the State Board of Education shall adopt rules and regulations necessary for carrying out the provisions of the law, and Section 4 vests in the State Superintendent of Schools the responsibility of administering the law.

The Act provides two separate methods or procedures to calculate the financial ability of local units of school administration to raise funds in support of the local unit's minimum foundation program for education. One method applies to each independent school system located within a county, and the other method or procedure applies to all other local units of school administration. Section 22 (B) of the Act, which provides for these procedures, is as follows: "The financial ability of each local unit of administration to raise funds in support of the local unit's minimum foundation program of education for the 1965-66 school year, commencing on July 1, 1965, and for each year thereafter shall be calculated as follows:

"(1)   Multiply the percent that the equalized adjusted school property tax digest of each county is of the total equalized adjusted school property tax digest for the State as a whole by

that portion of the estimated cost of the state-wide minimum foundation program for the fiscal school year to be paid by local. funds, calculated in accordance with provisions of subparagraph (2) of this Section. The sum obtained by this multiplication shall be the amount of funds to be raised within a county in support of the cost of providing a minimum foundation program of education in the public schools of the county determined in accordance with the local financial ability of the county. Where two or more counties have merged or consolidated into a single area public school system, the sum obtained by the foregoing multiplication for each of the counties within the resulting area public school system shall be combined and the combined sum shall be the amount of funds to be raised within the area public school system in support of the cost of providing a minimum foundation program of education in the public schools of the area public school system determined in accordance with the local financial ability of the counties within such school system. In those counties of the State which have more than one school system within the county, the amount of local funds to be put up by the several local units of administration within the county in support of the cost of providing a minimum foundation program of education in the public schools of the local unit of administration shall be determined by multiplying the per cent that the equalized adjusted school property tax digest of the respective local unit of administration is of the total equalized adjusted school property tax digest of all local units of administration in the county by the amount of local funds to be raised by or within the county in support of the cost of providing a minimum foundation program of education in the public schools of the county, provided, however, that the equalized adjusted school property tax digest of each independent school system located within a county shall be calculated on the basis of 133 1/3 per cent of the county equalized adjusted school property tax digest of all property located within the territory of the independent school system.

"(2)   The State Board of Education shall determine the portion of the estimated cost of the state-wide minimum foundation program to be paid by local funds by multiplying the estimated

cost of the state-wide minimum foundation program for the school year by the percentage share of the cost of such state-wide program to be paid by local funds on a state-wide basis. Commencing with the 1965-66 school year, beginning on July 1, 1965, the estimated cost of the state-wide minimum foundation program shall be shared on a state-wide basis of eighty-four per cent (84%) State funds and sixteen percent (16%) local funds, provided, however, that the share of the estimated cost of the state-wide minimum foundation program to be paid by local funds shall thereafter be increased at the beginning of each subsequent fiscal school year by one percentage point per year for four years, so that commencing with the 1969-1970 fiscal school year the state-wide cost of the minimum foundation program shall be shared on the basis of eighty per cent (80%) State funds and twenty per cent (20%) local funds.

"(3)   The sum of the equalized adjusted school property tax digest of each county in the State, and of each independent school system located within the several counties in the State, and the sum of the equalized adjusted school property tax digest for the State as a whole, shall be furnished to the State Board of Education by the State Auditor on or before February 1 of 1965 and each year thereafter."

On February 15, 1966, John F. Ingram, Jr. and others, as members of the City of Decatur Board of Education, and Carl G. Renfroe, Superintendent of the City of Decatur Public Schools, filed their petition against Donald E. Payton and others, as members of the Georgia State Board of Education, and the State Superintendent of Schools. Plaintiffs prayed that by writ of mandamus the defendants be required "to calculate the local financial ability of the Independent School System of the City of Decatur, Georgia, according to the provisions of the aforesaid Act of the General Assembly of Georgia, approved January 24, 1964, (1964 Georgia Laws, pages 3 through 49) without applying the aforesaid quoted proviso clause as set forth in Section 22 (B), Subparagraph (1) of said Act, and to allot to the City of Decatur Board of Education its lawful portion of state-contributed minimum foundation program of education funds determined according to the provisions of said

Act without giving effect to the said quoted proviso clause of Section 22 (B), Subparagraph (1) of said Act." Plaintiffs further prayed that the proviso clause of Section 22 (B), Subparagraph (1) to wit "that the equalized adjusted school property tax digest of each independent school system located within a county shall be calculated on the basis of 133 1/3 per cent of the county equalized adjusted school property tax digest of all property located within the territory of the independent school system" be declared unconstitutional, null and void as violating the following provisions of the Georgia Constitution: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law. No general law affecting private rights, shall be varied in any particular case, by special legislation, except with the free consent, in writing, of all persons to be affected thereby; and no person under legal disability to contract, is capable of such consent" (Art. I, Sec. IV, Par. I; *Code Ann.* § 2-401); "Protection to person and property is the paramount duty of government, and shall be impartial and complete" (Art. I, Sec. I, Par. II; *Code Ann.* § 2-102); and "No person shall be deprived of life, liberty, or property, except by due process of law." Art. I, Sec. I, Par. III (*Code Ann.* § 2-103).

The general demurrer of the defendants was sustained, and the case dismissed. The plaintiffs filed their appeal, and error is enumerated on the order sustaining the general demurrer.

■ We first consider the attack on the constitutionality of the proviso in Section 22 (B) of the Act. We agree with counsel for the appellants that the main issue of law is whether there is "a rational basis for different classification of local units of school administration in the Minimum Foundation Program of Education Act so as to create disparity of fiscal treatment in such manner as to impose upon independent school systems located within a county the requirement to pay a greater share of the costs of such program than is required by other local units of school administration in order to share in state-contributed funds to carry out the minimum foundation program of education." The main thrust of appellants' argument

is that "the financial ability of each local unit of school administration in Georgia to raise funds in support of the local unit's minimum foundation program of education is not calculated on a uniform basis in that independent school systems located within a county are required to put up funds calculated on the basis of 133 1/3 percent of the county equalized adjusted school property tax digest of all pronerty located within the territory of the independent school system, while such financial ability of local units of administration in Georgia comprising an entire county is calculated on the basis of 100 percent of the equalized adjusted school property tax digest of all property located within the territory of such local unit of administration. The uniformity of the Act is thus destroyed." Appellants argue that such classification is unreasonable, inequitable, unjust and partial.

We do not agree that the 1964 Act is subject to any of the attacks made upon it regarding ,its constitutionality. The 1945 Georgia Constitution classifies independent and county school systems separately. Art. VIII, Sec. V, Par. I (*Code Ann.* § 2-6801) provides in part that "authority is granted to counties to establish and maintain public schools within their limits. Each county, exclusive of any independent school system now in existence in a county, shall compose one school district and shall be confined to the control and management of a county board of education." Art. VIII, Sec. VII, Par. I (*Code Ann.* § 2-7001) provides that "authority is hereby granted to municipal corporations to maintain existing independent school systems, and support the same as authorized by special or general law, and such existing systems may add thereto colleges. No independent school system shall hereafter be established." Art. VIII, Sec. XII, Par. I (*Code Ann.* § 2-7501) provides in part that "the fiscal authority of the several counties shall levy a tax for the support and maintenance of education not less than five mills nor greater than twenty mills (as recommended by the county board of education) upon the dollar of all taxable property in the county located outside independent school systems." No such limitation is imposed upon independent school systems. Under Art. VII, Sec. I, Par. IV (*Code Ann.* § 2-5404)

of the Georgia Constitution, a homestead exemption of $2,000 for taxation is granted as to taxes for county school purposes, but no exemption applies to taxes levied by municipalities.

"One of the basic principles involved in considering the validity of legislation assailed under equality provisions of the federal and state Constitutions is that in the exercise of its power to make classifications for the purpose of enacting laws over matters within its jurisdiction, the state is recognized as enjoying a wide range of discretion. Therefore, whenever the power to regulate exists, the details of the legislation and the exceptions proper to be made rest primarily within the discretion of the state legislature. The legislative power to classify includes the power to subclassify within reason.

"It is a principle of the utmost importance and one which must be kept in mind in any case that if the legislature has no authority to deal with the subject at which measures are aimed, a classification, however logical, appropriate, or scientific, will not be sustained. If such authority does exist, a classification may be deficient in all these attributes, may be harsh and oppressive, and yet be within the power of the legislature.

"It is also important to note that where the Constitution makes a classification, a different one cannot be made by the legislature. Conversely, if the Constitution expressly sanctions a classification, it cannot be held invalid. Hence, a classification recognized by the Twenty-first Amendment cannot be deemed forbidden by the Fourteenth." 16 AmJur2d 862, 863, Constitutional Law, § 495.

In many decisions of this court, the right of the General Assembly to classify the objects and subjects regulated on a different basis has been sustained where such classification is not arbitrary but has a reasonable relationship to the subject matter, object and purposes of the statute. *Cooper v. Rollins,* 152 Ga. 588 (110 SE 726); *Georgia, S. & F. R. Co. v. Adkins,* 156 Ga. 826, 831 (120 SE 610); *Gibbs v. Milk Control Board,* 185 Ga. 844 (196 SE 791); *Holcombe v. Georgia Milk &c. Confed.,* 188 Ga. 358 (3 SE2d 705).

There is a reasonable basis for classifying county school systems and independent school systems separately as to their

respective support of their schools and imposing upon the independent school systems a burden of support by local taxation greater than that required of a county system in order to receive state funds to support the minimum foundation program. There are several factors that the General Assembly might have considered in making this classification: (a) All of the independent school systems are located in incorporated municipalities, (b) there is a greater taxable wealth in cities than in unincorporated and rural areas, (c) cities are likely to have a greater wealth per capita or per pupil than suburban county school systems, (d) county school systems have constitutional limitations on their power to tax for school purposes, whereas a municipal independent school system is subject only to the limitations of its charter, and (e) the ratio of taxable wealth to the number of children to be educated is related to the purpose of the minimum education foundation program so that each local system bears its fair share of the total local effort required. The General Assembly had the right in the distribution of state funds to make such distribution in recognition of the financial, taxable wealth and other differences between city and county school systems. The classification here having a reasonable basis does not offend the Constitution because it is not made with mathematical nicety or because in practice it results in some inequality.

If the independent school system of the City of Decatur wants the State Board of Education to allocate more of the state moneys for the support of its system, the request should be made to the General Assembly and not to the courts.

■ However, it is contended that if the proviso of Section 22 (B) is constitutional, it does not apply to the independent City of Decatur School System because said proviso does not apply to independent school systems extending across county lines and lying partially within two separate counties, and since the independent school system of the City of Atlanta lies in two counties, Fulton and DeKalb, the Act does not apply to the City of Decatur School System. It is argued by counsel for the appellants that "there is discrimination and disparity of fiscal treatment, and inequality between independent school

systems located within a county and independent school systems not located within a county but extending across county lines, the discrimination, inequality and disparity of fiscal treatment working loss and injury to those members of that class of local unites [sic] of school administration which are independent school systems located within a county. Such discrimination and disparity of fiscal treatment destroys uniformity and equality and is arbitrary and not based on reason."

The ruling in the case of *Rice v. Cook,* 222 Ga. 499, controls this contention adversely to the appellant.

It was not error to sustain the general demurrer and dismiss the petition.

*Judgment affirmed. All the Justices concur.*