**THIRD DIVISION
ELLINGTON, P. J.,
BETHEL and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 1, 2018**

# In the Court of Appeals of Georgia

A18A1031. ASHLEY v. CARSTARPHEN.

BETHEL, Judge.

Michael Ashley petitioned the superior court for a writ of mandamus to compel Meria Carstarphen, in her official capacity as Superintendent of Atlanta Public Schools (APS),[1] to hold a due process hearing regarding the non-renewal of his employment contract as a public school administrator pursuant to the Fair Dismissal Act.[2] Carstarphen moved to dismiss the petition arguing that, because Ashley voluntarily retired through the Teachers Retirement System of Georgia (TRS), he was

---

[1] "Mandamus is a personal action against a public officer, not against the office. Accordingly, [APS] is not subject to mandamus, although its executive officer, [Meria Carstarphen], a named party in this action, is." *Hall v. Nelson*, 282 Ga. 441, 444 (4) (651 SE2d 72) (2007) (citation and punctuation omitted).

[2] *See* OCGA § 20-2-940 et seq.

no longer an employee of APS, and therefore no longer eligible for a due process hearing. The superior court granted the motion, finding that Ashley did not have a clear legal right to have any act performed by Carstarphen in her official capacity with APS in regard to the renewal of Ashley's contract. On appeal, we are asked to determine whether the trial court erred in finding that Ashley effectively waived his right to a due process hearing when he voluntarily filed for retirement and began receiving retirement benefits through TRS. We agree with the trial court that Ashley's voluntary retirement waived his right to a due process hearing and therefore affirm.

"A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his claim." *Alcatraz Media, LLC v. Yahoo! Inc.*, 290 Ga. App. 882, 882 (660 SE2d 797) (2008). "We apply a de novo standard of review to the trial court's grant of a motion to dismiss." *Id*.

So viewed, the record shows that Ashley was employed with APS for over 30 years. During the 2015 - 2016 academic year, Ashley worked as an assistant principal at an APS middle school. On May 6, 2016, APS sent a letter to Ashley informing him that APS was recommending to the Atlanta Board of Education (the Board) that his employment contract not be renewed for the 2016 - 2017 academic year because his

current position was being abolished. The letter went on to inform Ashley that his employment contract with APS would end June 30, 2016, but that he was eligible for re-hire. The letter also stated that Ashley was entitled to certain procedural safeguards before he could be demoted or dismissed from APS, which included a right to a due process hearing.

Pursuant to OCGA §§ 20-2-940 and 20-2-942 (b) (1), Ashley timely submitted a request for a due process hearing to challenge the non-renewal of his employment contract with APS.[3] The hearing, originally scheduled for June 28, 2016, was continued to July 27, 2016, and continued again pending settlement discussions. On or about July 13, 2016, Ashley submitted an online application to file for retirement with TRS, listing July 1, 2016, as the effective date of his retirement. That same day, Ashley logged on to the APS portal, completed two required steps, and retired from APS. While settlement negotiations were pending, APS notified Ashley on September

_____

[3]Although Ashley was an assistant principal at the time his contract was not renewed, he retained the fair dismissal rights set forth under OCGA § 20-2-942 as a teacher. *See* OCGA § 20-2-942 (c) (2) ("A teacher who had acquired any rights to continued employment under this Code section prior to April 7, 1995, and who is or becomes a school administrator without any break in employment with the local board for which the person had been a teacher shall retain those rights under this Code section to continued employment in the position as teacher with such local board.").

9, 2016, that it had learned of his retirement from TRS, effective July 1, 2016. In an email exchange between attorneys for the parties, APS explained that due to Ashley's retirement, APS would no longer continue settlement discussions or proceed with the due process hearing regarding the non-renewal of his employment contract.

Ashley then filed a verified petition for mandamus asking the superior court to compel Carstarphen to hold the due process hearing. Carstarphen filed a motion to dismiss the petition, which was granted following a hearing. This appeal followed.

In his sole enumeration, Ashley argues that his retirement through TRS did not waive his right to a due process hearing, and thus the trial court erred in dismissing his petition for mandamus. We disagree.

> Mandamus is an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy. It is a discretionary remedy that courts may grant only when the petitioner has a clear legal right to the relief sought[.] . . . In general, mandamus relief is not available to compel officials to follow a general course of conduct, perform a discretionary act, or undo a past act.

*Schrenko v. DeKalb Cty. Sch. Dist.*, 276 Ga. 786, 794 (3) (582 SE2d 109) (2003) (footnotes omitted).

4

Under Georgia law, local boards of education are authorized to take employment actions with respect to school personnel, but absent a recommendation by the school superintendent, it has no independent authority to hire, fire, or otherwise assign personnel. *See* OCGA § 20-2-211 (a). *See also, Liberty Cty. Sch. Dist. v. Halliburton*, 328 Ga. App. 422, 429 (4) (762 SE2d 138) (2014) (citation and punctuation omitted), overruled on other grounds by *Rivera v. Washington*, 298 Ga. 770 (784 SE2d 775) (2016). The authority vested in school superintendents and local school boards with respect to employment decisions is limited by statute.

Pursuant to Georgia's Fair Dismissal Act, OCGA §§ 20-2-940 through 20-2-948, after a teacher's fourth consecutive contract with a local board of education, the teacher is entitled to certain "tenure rights" which, under the Act, mandate that a local board can only demote or fail to renew the contract of the tenured teacher for the reasons specified in OCGA § 20-2-940 and after providing specified procedural safeguards. *See Clayton Cty. Bd. of Educ. v. Wilmer*, 325 Ga. App. 637, 638 (753 SE2d 459) (2014). The procedural safeguards outlined in the statute include providing the tenured teacher with written notice and an opportunity to challenge the non-renewal of his contract at a due process hearing before the local school board

prior to any final action being taken by the local school board. *See* OCGA § 20-2-942

(b); *see also* OCGA § 20-2-940 (b) through (f).

In this case, while awaiting the outcome of the administrative process for

challenging the non-renewal of his contract, Ashley applied for retirement with TRS

to begin receiving retirement benefits. OCGA § 47-3-101 (a), the statute that outlines

the requirements for eligible employees to receive retirement benefits through TRS,

provides in part that

> Any member[4] in service may retire upon written application to the board
> of trustees[.] . . . The effective date of retirement will be the first of the
> month in which the application is received by the board of trustees[.] .
> . . Each employer shall certify to the board of trustees the date on which
> the employee's employment is or will be severed and that no agreement
> exists to allow the employee to return to service, including service as or
> for an independent contractor.

Here, the question presented is whether Ashley's subsequent retirement

through TRS waived his right to a due process hearing. Because the issues in this case

center on the interplay between OCGA § 47-3-101 (a) and OCGA §§ 20-2-942 (b)

---

[4] A "member" is defined as "any teacher included in the membership of the retirement system." OCGA § 47-3-1 (15). The term "teacher" is defined as "a permanent status employee employed not less than half time" and is an employee of "a public school or a local board of education." OCGA § 47-3-1 (28) (A).

6

(1) and 20-2-940 (b) through (f), this Court must abide by the settled principles of statutory construction. That is, a statute draws its meaning from its text and "we must read the statutory text, in its most natural and reasonable way, as an ordinary speaker of the English language would." *Tibbles v. Teachers Ret. Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) (citation omitted).

With the above in mind, the record reflects that after receiving notice that his employment contract would not be renewed by APS, Ashley, an employee of APS, timely filed a request for a due process hearing in accordance with OCGA §§ 20-2-942 (b) (1) and 20-2-940 (b) through (f). Ashley claims that he did not retire from APS. He instead argues that by virtue of the May 2016 letter, he was effectively terminated by APS as of June 30, 2016, and was thus eligible to begin receiving retirement benefits while he awaited the outcome of the pending settlement negotiations with APS. While it is true that as of July 1, 2016, Ashley was no longer under contract with APS by virtue of his expired employment contract, the absence of a new contract did not equate to a termination by APS. Under OCGA § 20-2-942 (b) (1), Ashley retained the right to challenge the recommendation that his contract not be renewed before he could be demoted or non-renewed, and thus remained

7

eligible to receive a new employment contract at any time by APS. More importantly, the record shows that no action had been taken by the Board regarding Carstarphen's recommendation that Ashley's contract not be renewed. Thus, the trial court was correct in finding that until he elected to retire from APS, Ashley was entitled to the procedural safeguards outlined in the statute.[5]

Further, the relevant statutes make clear that the procedural safeguards outlined therein are only afforded to individuals who are employees of APS prior to their discharge or suspension. *See* OCGA § 20-2-942 (a) (4) ("Teacher" means any professional school *employee* certificated by the Professional Standards Commission[.]" (emphasis supplied)); *see also* OCGA § 20-2-940 (b) ("Before the discharge or suspension of a teacher, administrator, or other employee having a contract of employment for a definite term, written notice of the charges shall be given[.]"). When Ashley applied for retirement with TRS on July 13, 2016, as a condition precedent to receiving retirement benefits under OCGA § 47-3-101 (a), he

---

[5] We are unpersuaded by Ashley's argument that because APS did not pay him beyond the expiration of his employment contract, that such lack of payment by APS was evidence of his termination. We find no support in the statute to suggest that APS was required to continue to pay Ashley beyond the term of his employment contract while the due process proceedings were pending. The only relevant requirement was that Ashley be an employee of APS in order to avail himself to the procedural safeguards outlined in the statute.

8

could no longer be an employee of APS and "[a]ny return to employment or rendering of any paid service . . . for [APS] during the calendar month of the effective date of retirement [would] . . . nullify the application for retirement."OCGA § 47-3-101 (a).

The record shows that when submitting his application to TRS, Ashley acknowledged that upon the submission of his application to receive retirement benefits, that APS would be notified of his election to receive benefits, that APS would certify the date on which Ashley retired, and that no agreement existed that would allow Ashley to return to service. The record further shows that Ashley logged onto the APS web portal and affirmatively elected to retire from APS so that APS could certify he was no longer employed and was eligible to begin receiving retirement benefits shortly thereafter. Despite Ashley's contention that his employment was terminated by operation of the expiration of his employment contract, it was not until Ashley voluntarily submitted his request through the APS web portal to retire, that his employment relationship with APS was severed. There is no dispute that Ashley began receiving retirement benefits in July 2016, which by operation of OCGA § 47-3-101 (a) means that he was no longer an employee of APS and, accordingly, no longer entitled to a due process hearing. Thus, when Ashley applied for and began receiving retirement benefits through TRS, he was no longer

9

an employee of APS and no longer entitled to the procedural safeguards as set forth in the Act.

Moreover, we find unavailing Ashley's argument that because OCGA § 47-3-127 allows him to suspend or terminate his retirement if he is rehired by APS, his retirement did not forfeit his right to a due process hearing. In making this argument, Ashley effectively concedes that, as of the date of his retirement, he was not an employee of APS, and as explained *supra,* not entitled to the procedural safeguards outlined in the Act. Despite Ashley's reasons for applying for retirement, he cannot have it both ways with respect to his employment status. The conditions explained in the relevant statutes are clear and do not conflict. To become eligible to receive retirement benefits under OCGA § 47-3-101 (a), Ashley could not be an employee of APS. To challenge the non-renewal of his employment contract and be entitled to a due process hearing and other procedural safeguards under OCGA §§ 20-2-942 (b) (1) and 20-2-940 (b) - (f), Ashley had to remain an employee of APS. Accordingly, we agree with the trial court that when Ashley voluntarily retired and began receiving retirement benefits, he surrendered his right to a due process hearing because he was no longer an APS employee. Ashley therefore has no clear legal right to have any act performed by Carstarphen and is thus not entitled to a writ of mandamus.

10

*Judgment affirmed. Ellington, P. J., and Gobeil, J., concur.*